THE STATE OF OHIO, APPELLEE, *v.* MITCHELL, APPELLANT. ▌

[Cite as State v. Mitchell (1975), 47 Ohio App. 2d 61.]

(No. 874—Decided February 19, 1975.)

*Mr. James A. Berry,* prosecutor, for appellee.
*Messrs. Moses & Miller,* for appellant.

SHERER, J. Defendant, the appellant, was convicted on November 14, 1973, by a jury, of three counts of uttering and publishing a forged instrument, under former R. C. 2913.01, and was sentenced to the Ohio Penitentiary for three indeterminate periods of one to 20 years each, to be

served consecutively. From that judgment and sentence he appeals and sets forth the following assignments of error:

(1) An in-court identification is unreliable and should be excluded as evidence if the observing witness has no first-hand knowledge to identify the defendant other than his appearance in court.

(2) Tangible evidence introduced by the state contrary to Criminal Rule 16 is inadmissible if it is such a surprise to the defendant as to deny him a fair trial.

(3) Banking records introduced under R. C. 2317.40 were improperly admitted in a criminal prosecution to show that the alleged forged checks were not genuine.

(4) The prosecution, under Rule 16 of the Ohio Rules of Criminal Procedure, has an absolute duty to disclose information once a request has been made and when the prosecution fails to notify defendant's counsel of new witnesses it intends to call at trial such failure should prohibit the new witnesses from testifying.

(5) Fingerprint evidence is inadmissible in a court of law if a proper chain of title to the evidence from which the latent print came cannot be established.

The uncontradicted evidence adduced at the trial (defendant did not testify, nor did he call any other witnesses to controvert the state's case) revealed that, on May 13, 1973, at about 3:15 p. m., Roger Marcum, a police officer for the city of Springfield, observed a gold colored 1972 Plymouth automobile with Ohio License No. CY11 stop near the corner of Belmont and Main Streets in that city. Defendant alighted from the car, walked across Belmont Street and entered the Main-Belmont branch of The First National Bank of Springfield. Then, the Plymouth was driven by its remaining occupant, one Charles Edward Thomas, Sr., onto the bank's lot and around to the rear of the building where there was a drive-in teller's cage.

His suspicions aroused, Officer Marcum parked his car and entered the bank where he observed the defendant transacting some business at one of the teller's windows. The officer advised a bank officer, Donald Mefford, as to his suspicions and Mr. Mefford walked over to the tel-

ler's cage where he was asked by the teller to approve an exchange, requested by defendant, of $600 in small bills (mostly $20's) for larger denominations. After a conversation with defendant, Mr. Mefford gave his approval and the exchange was made. In the meantime, Officer Marcum had called the check squad at police headquarters. Mr. Mefford and Officer Marcum then saw defendant leave the bank and walk in the general direction of the bank's drive-in window.

Detective Robert Newell of the Springfield Police Department's check squad arrived at the bank at about 3:45 p. m. and picked up Officer Marcum in the bank's parking lot. The officers proceeded east on Main Street, looking for the gold 1972 Plymouth. Suddenly they observed that vehicle travelling west in the eastbound lanes of Main St. at a high rate of speed and being pursued by a Springfield police cruiser with its red light and siren going. Detective Newell reversed directions and followed. Back at Belmont and Main, the Plymouth turned onto Belmont and collided with another police cruiser and a private car and stopped.

Thomas was driving the Plymouth and defendant was in the front passenger's seat. They were removed from the car. All over the interior of the car, and in defendant's lap before he was removed, the officers observed bank checks, driver's licenses, white envelopes and paper money. Under the seat were Ohio license plates, No. 7550, which number corresponded with that on an Ohio passenger registration card for the Plymouth issued to one Patrick McCarty of Columbus, Ohio. The card was found on the defendant's person, along with a memorandum certificate of title for that car, also issued to Mr. McCarty. There was a portable typewriter on the back seat.

The officers picked up nine bank checks, five payable to Robert E. Little and four to William T. Trot, and all made out for an amount in the neighborhood of $290. Four of these checks purported to be drawn on The City National Bank of Columbus, by the Herman Construction Corporation, and bore what purported to be the signature of a G. A. Herman of that city. The other five checks purportedly were drawn on The Union Commerce Bank of Cleveland

by The Construction Investment Company of Columbus. One Ohio driver's license, with the name Robert Little thereon, two licenses with the name William T. Trot indicated, and a savings account passbook issued to William T. Trot by the First National Bank of Springfield were also picked up by the officers.

Four white business-size envelopes were found on the front seat and floor by the officers. The outside of each bore a name and address and a series of numbers. The names were, respectively: Laurence E. Booghier (P), Christ E. Brouhard (Q), Jerry J. Bartram (R), and Phill L. Agle (S). Inside these envelopes there were bank checks drawn on Columbus, Dayton and Newark banks by the Construction Investment Company, Herman Construction Corporation and, in addition, W & G, Inc. of Columbus and Zeiher's, Inc. of Newark. There were 6, 7, 5 and 6 checks in Exhibits P, Q, R and S, respectively. Each of the checks in each envelope were made payable to the man whose name was on that envelope and the amounts were all in the neighborhood of $290, except for the Zeiher's checks which were around $190 each. In addition, there was a blue and a pink Ohio driver's license in each envelope with each man's name and address typed thereon and purportedly issued by a Julietta Groeber of Springfield, Ohio. (All of these driver's license forms were issued by the Bureau of Motor Vehicles to a Registrar named John Keller in Lebanon, Ohio. This was determinable by their serial numbers.) All of those checks as well as the aforesaid loose checks had been typed and a check writer used which appeared to be the same for each check. The checks found in the car had a total face amount of $9,082.33 and all were dated either May 14 or May 15, 1973.

Scattered on defendant's lap, on the front seat, and on the floor, was U. S. currency in various denominations which totalled $1,158.98. On the person of the defendant, the officers found, in addition to the items previously mentioned, a repair bill for the Plymouth and a piece of paper. The repair bill bore defendant's name and indicated that the car was repaired on May 14, 1973, by a Columbus auto

dealer. The paper contained the same information printed on the outside of the white envelope; namely, the names of Messrs. Booghier, Brouhard, Bartram, and Agle, their addresses, the identical series of numbers, and, in addition, their wives' names (except for Mr. Agle). The paper was found inside a pocket telephone directory in defendant's pocket.

On that day, May 18, 1973, or, on Monday, May 21, 1973, Detective Belcher secured five separate bank checks which had been cashed at the First National Bank of Springfield on the 18th of May, 1973. These checks are described in the following table:

| Drawee | Drawer | Date | Face Amount | Payee | State's Ex. No. |
|--------|--------|------|-------------|-------|-----------------|
| City National Bank, Columbus | Herman Constr. Corp. Columbus | 5-14-73 | $289.98 | Jerry J. Bartram | Y |
| City National Bank, Columbus | Herman Constr. Corp. Columbus | 5-15-73 | $297.11 | William T. Trot | Z |
| Union Commerce Bank, Cleveland | Construction Investment Co., Columbus | 5-15-73 | $296.18 | Phillip L. Agle | AA |
| City National Bank, Columbus | Herman Constr. Corp. Columbus | 5-15-73 | $298.11 | William T. Trot | BB |
| City National Bank, Columbus | Herman Constr. Corp. Columbus | 5-15-73 | $296.11 | Lawrence E. Booghier | CC |

The serial numbers on the above checks were contiguous to those on the uncashed checks found in the Plymouth.

All of the above five checks were cashed for co-defendant Charles Thomas, by drive-in tellers at four separate branch offices of the bank on the afternoon of May 18, 1973 —the last one at the Belmont-Main branch while defendant was inside the bank exchanging currencies. The branches and tellers were:

| Branch | Teller |
|--------|--------|
| Belmont-Main | Loretta Townsend |
| North Side | Shirley Kearfott |
| South Side | Sandra Trinkle |
| South Side | Kathy Cooke |
| West Side | Kathy Scholl |

In each instance, Thomas presented one of the driver's licenses purporting to be the license of the payee as a verification of his identity and, in one instance, the savings passbook of Mr. Trot. The tellers inscribed the serial number of the driver's license on each check and those numbers matched those on each of the pairs of driver's licenses found in the Plymouth with Messrs. Bartram, Trot, Agle and Booghier's names affixed thereto.

In one incident, the teller at the West Side branch indicated that someone was in the car with Thomas, but she could not identify him. None of the other tellers saw or noticed another person. Defendant and Thomas were indicted jointly and charged with uttering false checks. According to Messrs. Bartram, Booghier, Brouhard, and Agle, the driver's licenses found in the car with their names thereon were not their property, they never worked for any of the concerns which purportedly issued the checks made payable to them which were cashed by Thomas and, or, found in the Plymouth, but the addresses on the envelopes were correct for their residences in Springfield. In addition Messrs. Bartram, Brouhard, and Agle said that the series of numbers on three of the checks represented the account number of their current accounts at The First National Bank; Mr. Booghier had no current account there. All indicated that the social security number on the spurious driver's licenses was not their correct one. Messrs. Bartram and Booghier stated that the signature on the cashed checks were not genuine. Mr. Agle indicated that he had been retired twelve years, after 42 years with the United States Post Office.

Mr. John Patton, the senior administrative officer of

the City National Bank and Trust Company of Columbus, who was in charge of all of that bank's records, testified, over objection, that the Herman Construction Corporation had a checking account at that bank which was closed on April 4th, 1973, the account number of which was 1342424, and they had no account there thereafter. All of the checks mentioned, with the Herman Corporation's name thereon, bore that account number, including the cashed checks. Mr. Patton identified the only signature card the bank ever had for that Corporation and such was admitted into evidence. The authorized signature thereon was that of a Mark D. Herman, not G. A. Herman, and the handwriting thereon was patently not the same as that on any of the Herman checks introduced into evidence including those for which defendant was found guilty of uttering a false instrument.

The defendant's fingerprints were taken at the Springfield Police Station and a print lifted from one of the checks cashed by Thomas was identified by a fingerprint expert as being that of the left thumb of the defendant. It will be remembered that the teller who cashed this check noticed someone in the car with Thomas. The license tags on the car were found to belong to a man in Dayton, Ohio. The co-defendant, Thomas, pled guilty to all three counts before defendant's trial commenced.

Now, we turn to the assignments of error perfected by the defendant. We shall address ourselves to them in the order in which they were presented with the exception of No. 2, which will be considered in conjunction with No. 4, since they concern analogous subjects.

The first assignment of error is that the trial court should not have admitted the testimony of the police officer, Marcum, and the bank manager, Mefford, identifying the defendant as the person whom they saw in the Main-Belmont branch of the First National Bank on May 18, 1973, over the objections of the defendant. This was based on the claim that the witnesses did not have an "independent source" for their identification other than their having seen him in the bank that day. Defendant cites the case of

*United States* v *Wade* (1967), 388 U. S. 218 and cases related thereto as authority for his position.

However, the doctrine of *United States* v. *Wade, supra,* has application only to cases where an identification procedure is instituted by the police subsequent to the observation of the alleged wrongdoer by the witness and that identification procedure is somehow tainted. In those situations, the doctrine holds that the witness' present identification (in-court) is only admissible if it is demonstrated that it is now based on a source independent of the tainted identification procedure. Obviously that doctrine has no application to the facts in this case, which is simply one where the witnesses have observed the defendant and are now testifying to such observation.

The defendant confuses the ''independent source'' doctrine with that of the credibility of the witnesses. Here, we have no question as to the admissibility of the witnesses' testimony with regard to the identification, but simply one as to the credibility of their testimony as to the defendant's identity, and that is a question for the jury. The first assignment of error is, therefore, not well taken.

Now, passing assignment of error No. 2, as previously indicated, and addressing ourselves to assignment of error No. 3, the assertion made is that the court admitted, over objection, hearsay evidence pursuant to an exception to the hearsay rule known in the common law as the ''shopbook'' rule which is codified in Ohio by R. C. 2317.40, when the rule was not applicable to the evidence in question. Thus, it is alleged, defendant was denied his right to the cross-examination of and confrontation with the witness. There are really two questions involved in this proposition and they are: (1) Was the admitted evidence hearsay? and (2), if so, was R. C. 2317.40 applicable thereto? It can readily be seen that if the first question is answered in the negative, there is no need to consider the second question.

What is hearsay evidence? Professor Wigmore defines it as an assertion, offered testimonially, which has not been in some way subjected to the test of cross-exami-

nation. 5 Wigmore, Evidence, Section 1362. A testimonial assertion he defines as a witness' statement which is offered as the basis of an evidential inference of the truth of the fact asserted thereby and contains three elements: Observation, Recollection, and Communication. 2 Wigmore, Evidence, Sections 475 and 478.

Now let us examine the evidence complained of in this assignment of error in order to see if, upon applying the aforesaid definition, we can determine whether or not it was hearsay. There were two separate pieces of evidence involved, but both were introduced through the testimony of the same witness. The witness was one John Patton, who testified that he was the senior administrative officer of the City National Bank and Trust Company of Columbus, Ohio, and that, as such, he was in charge of all of the records of that bank. Mr. Patton said that he had with him the records of the checking account which that bank had with the Herman Construction Corp. and the number of that account was 1342424. When he was asked when that account was opened, there was an objection, the basis of which was that it was hearsay evidence, only admissible under R. C. 2317.40, which is not applicable in a criminal case. The objection was overruled and Mr. Patton was permitted to testify as stated hereinabove. Mr. Patton thereafter testified without further objection as to the date when the bank's records reflected that the Herman account was closed, produced the signature card which the bank had on file for the account, and stated that Mark D. Herman's was the only authorized signature thereon. The objection was not renewed, there was no motion to strike Mr. Patton's testimony, and there was no objection at all to the introduction of the signature card. (As a matter of fact, defendant stipulated that a photocopy could be entered into evidence in lieu of the original.) Therefore, the only testimonial evidence in question is the date the account was opened and, possibly, the facts of its being closed and the time it was closed.

Upon applying the above definition of hearsay evidence and the test of Observation, Recollection, and Com-

munication to that evidence, it can readily be seen that it was not hearsay. The facts asserted by the witness, Patton, were that the bank had no account with the Herman Corporation, and that it had one which, according to the bank's recollection, was opened and closed on certain dates, as far as the bank's knowledge of its business was concerned. Who else could be in a position to assert these facts and be cross-examined thereon other than the officer of the bank who is in charge of its records? A bank must, by law, be a corporation (R. C. 1101.04) and a corporation can only act through its officers. 12 Ohio Jurisprudence 2d 508, Corporations, Section 404. It was the bank's recollection of its business about which the witness was called upon to testify, not the business of the Herman Corporation, such as who ordered the opening or closing of the account in their name, or even whether they had done so. It is, therefore, the opinion of this court that the matters testified to by Mr. Patton were business matters of the bank, a corporation, that they were peculiarly within his knowledge as an officer of that corporation and that, as such, he was subject to cross-examination thereon, since the truth or falsity of the facts to which he testified did not depend upon the observations of some other person. Therefore, the matters introduced by him were not hearsay.

In passing, it must be noted that the facts as to the opening, closing and existence of that bank account were entirely irrelevant, with respect to the issues raised by the indictment. However, that objection was not raised, and, even if it had been, the admission of that evidence was clearly not prejudicial to the defendant. The defendant cites *State* v. *Tims* (1967), 9 Ohio St. 2d 136, as authority for his position. The law of that case is not applicable to the facts of this case, since no effort was made in this case to introduce the records as evidence only and, furthermore, the facts attempted to be proved here did not depend upon the observations and actions of some other person, as they did in *Tims*. In addition to the foregoing analysis, it is noted that by not objecting to the introduction of the evidence as to the date the account was

closed, the present non-existence of such, and to the use of the signature card, the defendant waived any error in this regard. *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83. For the foregoing reasons, the third assignment of error is not well taken.

Assignments of error Nos. 2 and 4 have to do with errors committed by the court below in that court's interpretation of some of the mandates of Rule 16 of the Ohio Rules of Criminal Procedure. These Rules became effective on July 1, 1973, before this trial commenced, but after the occurrence of the facts which gave rise to the indictment herein.

Before considering the merits of defendant's position in these assignments of error, we shall consider the state's contention that these rules are not applicable to the proceedings in this case. The state cites the Ohio Constitution and R. C. 1.58 as authorities for its proposition. The citation to the Constitution, "Section 5, (B)," is unclear. However, we suppose it refers to Article IV, Section 5 of that document and shall proceed under that assumption. This section was adopted on May 7, 1968 and under the directions of Division (B) of Section 5, the Supreme Court prescribed the Criminal Rules in question. Criminal Rule 59 states:

"These rules shall take effect on July 1, 1973, except for rules or portions of rules for which a later date is specified, which shall take effect on such later date. They govern all proceedings in actions brought after they take effect, and also all further proceedings in actions then pending, except to the extent that their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies."

Thus, by the plain language of that rule, the Criminal Rules did apply to this action since *it* was pending at the time the rules took effect. (The defendant was indicted on June 28, 1973, and was arraigned on August 2, 1973.) In addition, any statement in R. C. 1.58 to the contrary would be rendered null and void by the Constitution. Di-

vision B of Section 5, *supra,* in the last sentence of the first paragraph thereof states: "All laws in conflict with such rules shall be of no further force and effect after such rules have taken effect." Therefore, since the Constitution is superior to any statute, we believe that the provisions of the Rules of Criminal Procedure were applicable to this proceeding and we shall now go on to consider the contentions of the defendant, in these assignments of error.

In his second assignment of error, defendant asserts that the court below erred when he admitted the state's exhibit DD and permitted its use as evidence over his objection that he had not been permitted to inspect and copy that document after making due demand therefor. As we indicated, defendant, after his arrest, was searched and exhibit DD, the piece of paper on which was written the names, addresses, and bank account numbers, etc., found on some of the checks, was found in an address book in his pocket. After defendant's arraignment on August 2, 1973, his counsel duly filed a demand for discovery, on August 7, 1973, and followed this with a motion therefor, on August 21, 1973. Criminal Rule 16, reads as follows:

"*Discovery and Inspection*

"(A) Demand for discovery. Upon written request each party shall forthwith provide the discovery herein allowed. Motions for discovery shall certify that demand for discovery has been made and the discovery has not been provided."

In that motion, defendant requested an order permitting him to *inspect* papers which the prosecutor intended to use at the trial. The court entered no order pursuant to this motion, presumably because the prosecutor answered the motion on August 22nd, telling the defendant, among other things, that the papers were in the custody of the Springfield police and could be examined at their headquarters. Since no court order ensued, it must be presumed that the defendant was satisfied by the prosecutor's compliance with his request.

There was a hearing conducted out of the presence

of the jury after defendant objected to the state's use of exhibit DD as evidence. At that hearing, it developed that Mr. Moses, one of defendant's counsel at the trial as well as here, went to the police station where Detective Belcher took everything that was taken from the defendant out of an envelope and put it on a desk in front of Mr. Moses and permitted him to examine whatever he wished. Detective Belcher testified: "I had it all on the desk." He stated that everything was available. Detective Belcher also gave Mr. Moses copies of certain items and offered copies to him of every paper and document he had.

Criminal Rule 16(B)(1)(c) is applicable to this issue and it states:

"(c) Documents and tangible objects.

"Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant."

Since counsel for the defendant was permitted to inspect everything taken from the defendant and was offered a copy of anything he desired and since, under the plain language of this rule, that was all he was entitled to, it is clear that this assignment of error number 2 is not well taken. The police and the prosecutor need not take the defendant nor his counsel by the hand and sift through the belongings of the defendant for them since making these items available for inspection and copying, if so desired, is all that is required by these rules.

The fourth assignment of error is that the court erred when it allowed four witnesses to testify, although the prosecutor failed to notify the defendant before trial that he intended to utilize those witnesses. The witnesses' names were Kathy Scholl, Shirley Kearfott, Jeff Garrison and Donald Mefford.

The following portions of Criminal Rule 16 are applicable in this regard:

"(B) Disclosure of evidence by the prosecuting attorney.

"(1) Information subject to disclosure. * * *

"(e) Witness names and addresses: record. ·

"Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial, together with any record of prior felony convictions of any such witness, which record is within the knowledge of the prosecuting attorney. * * *"

"(D) Continuing duty to disclose.

"If, subsequent to compliance with a request or order pursuant to this rule, and prior to or during trial, a party discovers additional matter which would have been subject to discovery or inspection under the original request or order, he shall promptly make such matter available for discovery or inspection, or notify the other party or his attorney or the court of the existence of the additional matter, in order to allow the court to modify its previous order, or to allow the other party to make an appropriate request for additional discovery or inspection."

In the same demand and motion mentioned hereinabove, the defendant requested the names and addresses of all witnesses whom the prosecutor intended to call at the trial. In his aforesaid August 22, 1973, answer to the motion, the prosecutor attached a copy of the praecipe he had filed on August 14, 1973, requesting a subpoena for the witnesses for the state to appear for the trial scheduled to go forward on August 28, 1973. The names of the four witnesses in question were not on that praecipe.

The case did not come on for trial until November 13, 1973, due to several continuances granted to the defendant for various reasons including some analyses of the state's evidence which he wished to conduct. During that period of time, between August 22nd and the calling of each individual as his next witness at the trial, the prose-

cutor did not notify the defendant, nor his attorney, that he intended to call any of these four witnesses. Therefore, it is clear that the prosecutor did not comply with the requirements of Criminal Rule 16 (D). It is, however, also clear from the record that the prosecutor's inaction in this regard was not willful, but merely an oversight. Additionally, it is also clear, as we shall see, that the prosecutor did not actively suppress this information or attempt to conceal the identity and existence of these witnesses. This was, at its worst, a case of ineptness on the part of the prosecutor.

The witnesses were, however, permitted to testify and this presents two questions: (1) Should these witnesses have been permitted to testify? and (2) if they should not have been, was the appellant prejudiced thereby so that he was prevented from having a fair trial?

In order to evaluate the first question, the proceedings which occurred at the trial when each of these witnesses was presented and objected to, are highly significant and so we turn to an examination of such. The first of these was the bank teller, Kathy Scholl. An objection was made to her testimony on the sole ground that her name was not on the copy of the original subpoena list furnished to the appellant's counsel. An inquiry by the court developed the information that her name had, however, appeared on praecipes for subpoenas filed on September 5th, September 27th, and October 30th for trial dates set September 12th, October 11th, (both continued) and November 13th, respectively. Defendant's counsel made no showing of prejudice. The court overruled the objection, observing that the praecipes and subpoenas were a matter of public record and that defendant's counsel had to be alert. The identical objection without further showing was made to the witness, Shirley Kearfott, and at the court's inquiry it appeared that her name was on the October 30th praecipe. The court overruled that objection without comment.

The other two witnesses' names did not appear on any later praecipes. With respect to the witness, Donald Mef-

ford, the prosecutor stated to the court (after the same objection was made concerning this witness as was made with regard to the others) that he did not know he needed the witness "until yesterday" because he believed, up until then, that Detective Marcum would be able to testify to the matters about which Mr. Mefford was called to relate. After relating what the witness was called to testify to, the prosecutor twice asked Mr. Miller what he would have done to meet Mr. Mefford's testimony if he had known in advance that Mr. Mefford was to be called, and twice Mr. Miller responded, "I don't know." Again, no showing of prejudice was made. The court overruled the objection with the observation that he could not "see where this defendant would be prejudiced."

The witness, Jeffrey Garrison, took the defendant's fingerprints at the Springfield Police Station, and the prosecutor, when he called him at the trial on the 14th (Wednesday), asserted that he thought Sgt. Titer took the fingerprints up until last Friday (November 9th) when he discovered that Mr. Garrison took them instead. A perfunctory objection for the record, and nothing further, was made and overruled.

Before going on to answer the question as to whether the testimony of these witnesses should have been excluded, we must examine other portions of the Criminal Rules which we believe to be related to the issue raised here. Those rules and the portions thereof pertinent to our inquiry read as follows:

"Rule 1. Scope of Rules: Applicability; Construction; Exceptions * * *

"(B) Purpose and Construction.

"These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed and applied to secure the fair, impartial, speedy, and sure administration of justice, simplicity in procedure, and the elimination of unjustifiable expense and delay."

"Rule 16. Discovery and Inspection * * *

"(E) Regulation of discovery. * * *

"(3) Failure to comply.

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

Rule 33 (E) "Invalid grounds for new trial.

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of: * * *

"(3) The admission or rejection of any evidence offered against or for the defendant, unless the defendant was or may have been prejudiced thereby * * *."

Thus, although the defendant asked the court to exclude the testimony of these witnesses, the court had, under Criminal Rule 16(E) (3), four options, only one of which was to exclude the evidence. One of these options was to grant a continuance for which the defendant did not ask, and the other was to make such order as was deemed just under the circumstances. Applying the method of interpreting these rules, as set forth in Rule 1(B), to the orders of the trial court under the facts and circumstances of this case, we cannot escape the conclusion that a fair and impartial administration of justice was secured by the trial court's rulings in allowing the introduction of the evidence supplied by these four witnesses. Our attention has been directed to no Ohio case which has interpreted these rules differently.

Assuming, arguendo, that it was error to permit these witnesses to testify, was this error prejudicial to the Appellant? If not, under the terms of Criminal Rule 33(E) (3), his conviction cannot be reversed.

Before answering that question, we shall review other matters contained in the record which are pertinent thereto. (1) Both of the witnesses, Kearfott and Scholl, testified at the defendant's preliminary hearing as their names

are set forth in the entry of the municipal court binding him over to the Grand Jury, and this preliminary hearing was called to the attention of defendant's counsel in the prosecutor's answer to his demand for discovery. (2) That answer, furthermore, identified Check No. 539 as the one from which defendant's finger print was lifted. (This was Exhibit CC, the check cashed by Miss Scholl.) (3) In a request for a continuance filed September 7, 1973, defendant's counsel indicated that he had located fingerprint and handwriting experts to examine the state's evidence and that he had received copies of some, but not all of the checks. (4) In a letter, dated August 31, 1973, the prosecutor indicated that he was sending defendant's counsel a copy of the above check, a copy of a thumbprint lifted from that check, and two copies of defendant's "known prints," with a blow up of his left thumbprint. In addition to these matters gleaned from the record, it is noted from the transcript that the defendant had full opportunity to cross-examine all of these witnesses and, from their examination and testimony, it is difficult to conceive of any additional matter which defendant might have developed if he had actually been notified by the prosecutor as to their names and addresses. (The defendant was, at the very least, constructively notified as to Misses Scholl and Kearfott, by their having testified at the preliminary hearing, his having received copies of the checks cashed by them, and by the essential character of their testimony.) It is thus clear that defense counsel knew all about the pertinent parts of the state's case well in advance of the trial.

As we have indicated, we have been directed to no Ohio case which sustains the defendant's position that the trial court erred in this regard, or that its actions were prejudicial. Perhaps this is because these rules are so new. Therefore, this seems to be a case of first impression. Turning to the federal cases interpreting Fed. R. Crim. P 16, we find two cases which, under the facts of this case, sustain the actions of the trial court. The first of these is *United States* v. *Panzar* (C. A. 5, 1969), 418 F. 2d 1239, wherein the court held that it was not error to admit evi-

dence not revealed to the defendant when there was no showing that the prosecution was aware of it until the day of the trial. This is analogous to the evidence presented by witnesses Mefford and Garrison. The other case is that of *Clarke* v. *Burke* (C. A. 7, 1971), 440 F. 2d 853, where it was held that, in the absence of any damaging effect to the defendant's case caused by the prosecutor's suppression of some of the evidence, active misconduct of the prosecutor must be shown in order to warrant a reversal. This case is applicable to the testimony of all of these witnesses.

The cases cited by the defendant are not in point. *McMullen* v. *Maxwell* (1965), 3 Ohio St. 2d 160, involved misconduct of the prosecutor, which is entirely absent from this case. *United States* v. *Baum* (C. A. 2, 1973), 482 F. 2d 1325 was a case where the government *refused* to divulge the name of a vital witness, which is patently not the case here, where all that we have is simple negligence on the part of the prosecutor.

In order to show that he was prejudiced by the actions of the trial court in permitting these witnesses to testify, we believe that the defendant must demonstrate either through the record or otherwise that if he had foreknowledge of the pending testimony of a witness, he could have utilized this knowledge in preparing his case so as to enable him to either: (1) reveal some weakness in the state's case against him, or (2) more effectively present a credible defense establishing his innocence, or both. The record in this case does not indicate that the defendant did or could have done either of these things.

As a matter of fact, we believe that a fair perusal of the evidence in this case leads overwhelmingly to no other conclusion than that of the guilt of the defendant and, in the light of that belief, since it is inconceivable, from a perusal of this record, just what the defendant could have done differently from what he did, in mounting his defense, if he had been notified by the prosecutor in advance about these witnesses (assuming he did not know of them, or could not have learned of them which is questionable with respect to at least Kearfott and Scholl), we fail to see in what manner the defendant was prejudiced, or in what

manner the court below failed to afford him a fair trial.

The Rules of Criminal Procedure were not designed by our Supreme Court for the extinction of justice, but for its preservation. The purpose of the discovery procedure is to prevent surprise. The purpose is not to prevent the introduction by either party of evidence which the other side could easily and ordinarily discover on its own initiative, but is to prevent the secreting of evidence favorable to the defendant's case from him. The overall purpose is to make a trial a fair one. To refuse to admit this evidence would have been unfair to the state of Ohio, and would not have aided the defendant's preparation or his defense in any manner.

Therefore, since it must affirmatively be made to appear from the record that the defendant was prejudiced by the actions of the trial court in this regard, and since this has not been done, assignment of error No. 4 is not well taken.

The fifth assignment of error set forth above relates to the introduction of the latent fingerprint taken from the check offered in Exhibit CC. The defendant's argument is that the check was inadmissible because the state did not show where that check was after Miss Scholl cashed it and Detective Belcher obtained it from the bank. It characterizes this as a gap in the "chain of title."

Defendant misapplies to the law of evidence a doctrine applicable only to the law of titles. His argument goes to the weight of the evidence and not to its admissibility. The state adequately laid a foundation for the check and the print lifted therefrom, and that was all that was necessary prior to their being properly admitted into evidence. Therefore, the fifth assignment of error is likewise not well taken. Finding no prejudicial error in the proceedings of the trial court, the judgment will be affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and KERNS, J., concur.