[Cite as *State v. Isaac*, 2016-Ohio-7376.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 15CA87 |
| TRACY ISAAC | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Richland County Common Pleas, Case No. 2014CR0560 R

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 14, 2016

APPEARANCES:

For Plaintiff-Appellee

BAMBI COUCH PAGE
Prosecuting Attorney
Richland County, Ohio

By: DANIEL M. ROGERS
Assistant Prosecuting Attorney
Richland County Prosecutor's Office
38 S. Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

CASSANDRA J. M. MAYER
452 Park Ave. West
Mansfield, Ohio 44906

*Hoffman, J.*

{¶1} Defendant-appellant Tracy Isaac appeals her conviction entered by the Richland County Court of Common Pleas on one count of illegal manufacture of methamphetamines, in the vicinity of a school zone or juvenile; one count of illegal assembly or possession of chemicals for the manufacture of methamphetamines, in the vicinity of a school zone or juvenile; and two counts of child endangering. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On August 12, 2014, Officer Mandy Lynn Rodriquez of the Mansfield Metrich Drug Task Force received a call from a pharmacist at the Walgreens in Mansfield, Ohio. The pharmacist reported suspicious conduct on the part of two women attempting to purchase a quantity of pseudoephedrine while visiting the Walgreens pharmacy. The women had trouble producing identification, and one of the women left leaving behind her purported identification.   Each woman had prior significant history of purchasing pseudoephedrine.

{¶3} Officer Rodriquez and Officer Steven Schivinski of the Mansfield Metrich Drug Task Force drove to the Walgreens and spoke with the pharmacist, retrieving the left-behind identification. They learned the identification belonged to Joanne Burns, who had a suspended driver's license but had been issued a state identification card.

{¶4} The officers then drove to the address indicated on the identification card left at the pharmacy, that being 751 Armstrong in Mansfield, Ohio. The premises at the address appeared to be abandoned. A subsequent inquiry revealed Joanne Burns was

presently living at 739 Bowman Street in Mansfield, Ohio. The officers proceeded to that address.

{¶5} Upon arrival there, a boy about twelve years of age answered the door, stating no adults were home. The officers returned to the residence an hour later, noticing a vehicle in the driveway. Upon knocking, two adults, Joanne and Lyle Burns, answered the door. The officers obtained verbal consent to search the residence from the Burns.

{¶6} Present in the home were: Joanne and Lyle Burns, husband and wife, Appellant, and two minor children. A female child approximately five or six years of age belonging to Joanne and Lyle Burns and a male child who had previously answered the door, approximately twelve years of age, belonging to Appellant.

{¶7} Appellant indicated to the officers she had been staying at the residence for about two weeks due to marital problems with her husband. At the time the officers entered the home, Appellant was in an upstairs bedroom.

{¶8} Officers searched the residence, including the upstairs floor where the Burns and Appellant had bedrooms, and the basement. In the basement of the residence the officers found: two bottles of liquid, rubber tubing, coffee filters, rubber hosing, Coleman fuel, ammonia nitrate, peeled lithium batteries, and cold packs. The officers also conducted a test which positively determined the presence of ammonia, indicative of the manufacture of methamphetamine. The items were submitted to the Mansfield Police Crime Lab. The liquid found in a one-pot cooking vessel was tested for the presence of methamphetamine.

{¶9} The Richland County Grand Jury indicted Appellant as follows: Count One, manufacturing or engaging in the production of methamphetamine, in the vicinity of a

school zone and/or juvenile, in violation of R.C. 2925.04(A) and (C)(3)(b), a felony of the first degree; Count Two, assembling or possessing one or more chemicals used to manufacture methamphetamine, in the vicinity of a school and/or juvenile, in violation of R.C. 2925.041(A) and (C)(2), a felony of the second degree; and Counts Three and Four, endangering children, in violation of R.C. 2919.22(B)(6), both felonies of the third degree.

{¶10} On August 4, 2015, the State filed a motion for joinder of defendants. On August 25, 2015, Appellant filed a memorandum in opposition to the motion asserting the State had insufficient evidence to establish she had "any knowledge or involvement in the alleged manufacture of the methamphetamine."

{¶11} On September 2, 2015, six days prior to trial, the State provided supplemental discovery identifying Anthony Tambasco as an expert witness who tested a substance from the search, and provided a lab report prepared by Tambasco on August 13, 2014, identifying said substance as methamphetamine.

{¶12} On September 8, 2015, the day of trial, Appellant filed a motion in limine to preclude the introduction of Tambasco's report and the making of any reference to the substance identified as methamphetamine. Appellant noted discovery materials had been provided by the State to Appellant on September 30, 2014. Supplemental discovery was provided on October 6, 2014, December 22, 2014, February 27, 2015 and April 29, 2015. Appellant noted the State had not identified the expert witness regarding the chemical analysis performed in relation to methamphetamine nor was the lab report provided by the State with respect to chemical analysis in any of its discovery responses depite the fact Tambasco's report had been prepared more than one year prior to the scheduled day for trial. Appellant argued at the final pretrial the State asserted no evidence of

methamphetamine had been found relative to the case herein. The State did not allege otherwise.

{¶13} Appellant's motion in limine further moved for the exclusion of testimony relative to NPLEX records as prejudicial, non-relevant evidence. Particularly, Appellant argued evidence from a retailer dating back to June 1, 2013, in the NPLEX database is highly prejudicial, and not relevant to the charges herein. The trial court overruled the motion, finding the evidence relevant to the ultimate issue in the case as to who was manufacturing and who was purchasing the pseudoephedrine.

{¶14} The trial court overruled Appellant's motion in limine as to all of the evidence sought to be excluded.

{¶15} Appellant filed an affidavit of indigency on September 11, 2015.

{¶16} The matter proceeded to jury trial. The jury found Appellant guilty of the charges as alleged in the indictment.  On September 14, 2015, the trial court sentenced Appellant to a mandatory ten years imprisonment on Count One; the trial court merged Appellant's conviction on Count Two with her conviction on Count One.  The trial court sentenced Appellant to two years mandatory imprisonment on each count in Counts Three and Four, with the terms to run concurrently, for a total term of ten years.  Appellant was also sentenced to a five year term of mandatory post-release control, and a sixty month driver's license suspension.[1]

{¶17} Via Order of September 17, 2015, the trial court imposed costs in the amount of $1,400 jointly and severally between Appellant and her codefendant Joanne Burns.

---

[1] The trial court's September 14, 2015 Sentencing Entry did not impose costs.

{¶18} Appellant appeals, assigning as error:

{¶19} "I. THE TRIAL COURT ABUSED ITS DISCRETION, DENYING MS. ISAAC DUE PROCESS OF LAW AND A FAIR TRIAL WHEN IT DENIED HER A REMEDY AFTER THE STATE'S VIOLATION OF DISCOVERY RULE 16 AND WHEN THE TRIAL COURT ADMITTED THE EVIDENCE, CONTRARY TO THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶20} "II. THE TRIAL COURT ERRED WHEN IT DENIED MS. ISAAC HER RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW, AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS, BY PERMITTING EVIDENCE FROM NPLEX.

{¶21} "III. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT MS. ISAAC'S CONVICTIONS AND SAME WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} "IV. THE TRIAL COURT ERRED WHEN IT IMPOSED A MANDATORY FINE AND IMPOSITION OF COURT COSTS WITHOUT CONSIDERING MS. ISAAC'S INDIGENCE AND FAILED TO ORDER THE PAYMENT OF COURT COSTS ON THE RECORD AT THE TIME OF SENTENCING."

I.

{¶23} In the first assignment of error, Appellant asserts the trial court erred in denying her motion in limine. Specifically, Appellant argues the trial court erred in denying her motion to exclude the testimony of Anthony Tambasco as an expert witness regarding chemical analysis performed on materials confiscated from the residence during the

search herein, and to exclude the lab report prepared by Tambasco identifying the substance seized as methamphetamine.

{¶24} The basis of Appellant's motion stems from the State's failure to provide the lab report prior to trial, pursuant to Criminal Rule 16. The rule reads, in pertinent part,

**(A) Purpose, Scope and Reciprocity.** This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures.

*** 

(**K) Expert Witnesses; Reports.** An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not

prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

**(L) Regulation of Discovery.**

(1) The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

\*\*\*

Ohio Crim. R. 16

**{¶25}** Six days prior to trial, on September 22, 2015, the State first provided Appellant's trial counsel with Supplemental Discovery identifying Anthony Tambasco as an expert witness and submitted a lab report prepared on August 13, 2014. The lab report identified a substance found at 739 Bowman Street in Mansfield, as methamphetamine. The trial court held a hearing on Appellant's motion prior to trial.

**{¶26}** Appellant maintains she was prejudiced by the State's late disclosure as she was unable to have the substance independently tested or to obtain her own expert witness to testify as to the identity of the substance. The State responded Appellant had

been provided with an evidence admission slip reflecting a clear liquid seized from the residence, suspected of being methamphetamine had been submitted to the Mansfield Crime Lab, and this information had been provided during initial discovery.

{¶27} In *City of Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, the Ohio Supreme Court held,

> As this court stated in *State v. Howard* (1978), 56 Ohio St.2d 328, 333, 10 O.O.3d 448, 451, 383 N.E.2d 912, 915, "[t]he philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial." The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial. *State v. Mitchell* (1975), 47 Ohio App.2d 61, 80, 1 O.O.3d 181, 192, 352 N.E.2d 636, 648.

{¶28} ***

> We adopt the rationale upon which the opinions of these courts is based and find that a trial court must inquire into the circumstances surrounding a violation of Crim.R. 16 prior to imposing sanctions pursuant to Crim.R. 16(E)(3). Factors to be considered by the trial court include the extent to which the prosecution will be surprised or prejudiced by the witness' testimony, the impact of witness preclusion on the evidence at trial and the outcome of the case, whether violation of the discovery rules was willful or in bad faith, and the effectiveness of less severe sanctions.

**{¶29}** In *State v. Wiles* (1991), 59 Ohio St.3d 71, 78–79, 571 N.E.2d 97, the Supreme Court stated a trial court has discretion under Crim.R. 16(E)(3) to determine the appropriate response for failure of a party to disclose material subject to a valid discovery request. See also *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689. To determine whether a trial court has abused its discretion in dealing with Crim.R. 16 violations, we look to whether (1) the violation was willful, (2) foreknowledge would have benefited the defendant, and (3) the defendant suffered prejudice as a result of the state's failure to disclose the information. *Wiles*, supra. See, *State v. Jones*, 2009-Ohio-2381, ¶ 14, 183 Ohio App. 3d 189, 193–94, 916 N.E.2d 828, 831 abrogated by *State v. Darmond*, 2013-Ohio-966, ¶ 14, 135 Ohio St. 3d 343, 986 N.E.2d 971

**{¶30}** The trial court retains discretion to make sanctions other than precluding an expert's testimony. Ohio Criminal Rule 16(L), supra; *State v. Viera,* Fifth Dist. No. 11CAA020020, 2011-Ohio-5263. The trial court is required to impose the least severe sanction consistent with the purpose and rules of discovery. *State v. Opp*, 3rd Dist. 13-13-33, 2014-Ohio-1138.

**{¶31}** We find the trial court did not abuse its discretion in denying Appellant's motion in limine to exclude the evidence herein. The trial court found the State did not act willfully in violating the discovery rules, nor does Appellant allege the State acted willfully herein. Though clearly negligent in failing to comply with Criminal Rule 16, such negligence does not necessarily establish willfulness.

**{¶32}** Appellant was aware items consistent with the manufacture of methamphetamine and chemicals necessary for the manufacture of methamphetamine were confiscated from the home in which she was staying.  Her theory of defense

asserted prior to trial and during the trial proceedings was "lack of knowledge" of the methamphetamine lab. She argued she was merely a temporary resident in the home resulting from marital difficulty.

{¶33} Metrich Officer Perry Wheeler had confiscated a one-pot methamphetamine lab, including one bottle containing liquid, and three additional bottles containing residue (five bottles were seized in total), peeled lithium batteries, cold packs- ammonia nitrate, Coleman fuel, coffee filters with residue, and rubber tubing with residue. All the items confiscated were consistent with the manufacture and possession of chemicals necessary for the manufacture of methamphetamine.

{¶34} We find Appellant was not prejudiced by the late disclosure of the expert witness and/or lab report because Appellant's theory of defense (lack of knowledge and/or possession), was not impacted or negated thereby.

{¶35} We do not find the trial court abused its discretion in denying the motion in limine as to the testimony of the State's expert witness Anthony Tambasco and his lab report indicating the presence of methamphetamine. The record does not demonstrate the State acted willfully in providing late disclosure of the expert and report, and Appellant has not demonstrated prejudice as a result of the same.

{¶36} The first assignment of error is overruled.

II.

{¶37} In the second assignment of error, Appellant argues the trial court erred in denying her motion in limine as to the NPLEX evidence introduced by the State.

{¶38} Specifically, Appellant asserts the trial court abused its discretion in admitting testimony of Appellant's past purchases of pseudoephedrine through the

introduction of NPLEX records.  Appellant argues the evidence is highly prejudicial and irrelevant as the indictment alleges the crimes were committed on or about August 12, 2014, and some of the purchases were made well before the instant charges. We disagree.

**{¶39}** Krista McCormick, an employee of Appriss, Inc., the company who produces the National Precursor Lock Exchange (NPLEX), testified at trial herein. McCormick explained, in Ohio, pharmacies report all over-the-counter pseudoephedrine and ephedrine purchases to a database, NPLEX. McCormick testified Ohio limits the amount of pseudoephedrine a consumer may purchase in a 30-day time limit.

**{¶40}**  This Court recently affirmed the admission of NPLEX records as business records under Ohio Evidence Rule 803(6) in *State v. Coleman,* Richland App. No. 14-CA-82, 2015-Ohio-3907 and *State v. McDonald*, Fairfield No.  15-CA-45, 2016-Ohio-2699.

**{¶41}**  In *Coleman,* this Court held,

> All pharmacies must maintain a log book detailing the purchase or attempted purchase. All Ohio pharmacies are required by law to report all sales and attempted sales of pseudoephedrine to a central pseudoephedrine clearing house, called NPLEX.  The purpose of the NPLEX system is to monitor suspicious purchases of pseudoephedrine tablets. All purchase requests are submitted by the pharmacy to NPLEX along with the customer's driver's license. All such transactions are recorded and the information is available to law enforcement.

The law affirmatively imposes the duty to record and the contents of the record. It can be assumed, therefore, the record was made at or near the time of the purchase or attempted purchase.

{¶42} In *United States v. Collins*,799 F.3d 554, (6th Cir. 2015), the Sixth Circuit Court of Appeals found an Appriss, Inc. employee a "qualified witness" for the purpose of authenticating NPLEX records as business records under Fed. R. Evidence 803(6), which is identical to Ohio Evidence Rule 803(6).

{¶43} McCormick testified the records pertaining to Appellant indicated the most recent transaction for August 10, 2014, and the earliest date reflected a transaction on April 2, 2013. McCormick testified as to Appellant's purchases throughout this time period. The testimony included Appellant's purchases, attempted purchases and blocked purchases. McCormick testified Appellant purchased an inordinate amount of pseudoephedrine, totally over 33 purchases during the time span, for a total of 69.84 grams. Appellant unsuccessfully attempted to purchase pseudoephedrine an additional five times.

{¶44} O.R.C. 3715.052 requires retailers of pseudoephedrine and ephedrine to submit information to NPLEX, including the purchaser's name, address, quantity of the product purchased, date and time of purchase and government identification provided, including the identification number, and agency issuing the identification.

{¶45} The trial court found the testimony of McCormick relative to the NPLEX information relevant as Appellant was charged with manufacturing methamphetamine and possession of chemicals used for the manufacture of methamphetamine. The trial court specifically found the NPLEX testimony as introduced through the testimony of

McCormick was relevant to show Count II obtaining the possession of chemicals necessary for the manufacture of methamphetamine and also as to Count I, manufacturing.

**{¶46}** The testimony did not allege Appellant engaged in illegal activity or other "bad acts." We find Appellant's argument with regard to "other bad acts" evidence is not well-taken. Rather, Appellant's prior history purchase established Appellant purchased legal quantities of pseudoephedrine or was blocked from purchasing the same. The trial court overruled Appellant's objection, finding the same did not give rise to an Evidence Rule 404(B) issue. We agree.

**{¶47}** We do not find the trial court erred in finding the evidence relevant to issues herein, and the relevance outweighed any prejudice to Appellant.

**{¶48}** Appellant's second assignment of error is overruled.

III.

**{¶49}** In the third assigned error, Appellant maintains her convictions are against the manifest weight and sufficiency of the evidence.

**{¶50}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶51}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶52}** Appellant was convicted in Count One, of illegal manufacture methamphetamine, in violation of R.C. 2925.04(A) and (C)(3)(b), within the vicinity of a school zone and/or a juvenile; Count Two, illegal possession of chemicals for the manufacture of methamphetamine, in violation of R.C. 2925.041(A) and (C)(2), in the vicinity of a juvenile and/or a school zone; and Counts Three and Four, Endangering Children, in violation of R.C.2919.22(B)(6).

**{¶53}** Illegal manufacture of methamphetamine, in violation of R.C. 2925.04(A) and (C)(3)(b), reads,

> (A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.
>
> ***
>
> (C)(1) Whoever commits a violation of division (A) of this section that involves any drug other than marihuana is guilty of illegal manufacture of drugs, and whoever commits a violation of division (A) of this section that involves marihuana is guilty of illegal cultivation of marihuana.
>
> ***

(3) If the drug involved in the violation of division (A) of this section is methamphetamine, the penalty for the violation shall be determined as follows:

\*\*\*

(b) If the drug involved in the violation is methamphetamine and if the offense was committed in the vicinity of a juvenile, in the vicinity of a school, or on public premises, illegal manufacture of drugs is a felony of the first degree, and, subject to division (E) of this section, the court shall impose a mandatory prison term on the offender determined in accordance with this division. Except as otherwise provided in this division, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree that is not less than four years. If the offender previously has been convicted of or pleaded guilty to a violation of division (A) of this section, a violation of division (B)(6) of section 2919.22 of the Revised Code, or a violation of division (A) of section 2925.041 of the Revised Code, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree that is not less than five years.

**{¶54}** Count Two, in violation of R.C. 2925.041(A) and (C)(2) reads,

(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.

\*\*\*

(C) Whoever violates this section is guilty of illegal assembly or possession of chemicals for the manufacture of drugs. Except as otherwise provided in this division, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the third degree, and, except as otherwise provided in division (C)(1) or (2) of this section, division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender. If the offense was committed in the vicinity of a juvenile or in the vicinity of a school, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree, and, except as otherwise provided in division (C)(1) or (2) of this section, division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender. If the violation of division (A) of this section is a felony of the third degree under this division and if the chemical or chemicals assembled or possessed in violation of division (A) of this section may be used to manufacture methamphetamine, there either is a presumption for a prison term for the offense or the court shall impose a mandatory prison term on the offender, determined as follows:

***

(2) If the violation of division (A) of this section is a felony of the second degree under division (C) of this section and the chemical or chemicals assembled or possessed in committing the violation may be used to manufacture methamphetamine, the court shall impose as a mandatory

prison term one of the prison terms prescribed for a felony of the second degree that is not less than three years. If the violation of division (A) of this section is a felony of the second degree under division (C) of this section, if the chemical or chemicals assembled or possessed in committing the violation may be used to manufacture methamphetamine, and if the offender previously has been convicted of or pleaded guilty to a violation of division (A) of this section, a violation of division (B)(6) of section 2919. 22 of the Revised Code, or a violation of division (A) of section 2925.04 of the Revised Code, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree that is not less than five years.

{¶55} Appellant was further charged in Counts Three and Four with Endangering Children in violation of R.C. of 2919.22(B)(6), which reads,

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

\*\*\*

(6) Allow the child to be on the same parcel of real property and within one hundred feet of, or, in the case of more than one housing unit on the same parcel of real property, in the same housing unit and within one hundred feet of, any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section

2925.04 or 2925.041 of the Revised Code that is the basis of the violation

of this division.

{¶56} Appellant maintains the State failed to prove the culpable mental state of "knowingly" in Counts One and Two. Appellant asserts she had no knowledge of the methamphetamine lab in the basement of the residence. Rather, she was temporarily staying at the residence while experiencing marital difficulty with her husband without knowledge of the activities in the residence. Appellant maintains the State did not demonstrate Appellant's knowledge of the methamphetamine lab or the possession of chemicals in the basement.

{¶57} Viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could have found the essential elements of the charges proven beyond a reasonable doubt. Testimony at trial established Appellant had a prior history of purchasing a significant quantity of pseudoephedrine, including a recent attempted purchase with codefendant Joanne Burns with whom she was residing on August 12, 2014. Specifically, Appellant purchased an inordinate amount of pseudoephedrine in the months prior to August 12, 2014. Testimony of Lyle Burns at trial established Appellant used the basement in the home, including doing laundry there. Items consistent with the manufacture of methamphetamine were discovered in the basement. The liquid from the one-pot cook method taken from the home subsequently tested positive for methamphetamine.

{¶58} Viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could find beyond a reasonable doubt Appellant knew about and

participated in the manufacture of methamphetamine and possessed chemicals necessary for the manufacture of methamphetamine, in the vicinity of a juvenile.

{¶59} Further, there was sufficient testimony presented at trial both children resided at 739 Bowman Street on August 12, 2014, during which time there was evidence of a one-pot cook methamphetamine lab discovered by law enforcement. The statute does not require the state to prove Appellant had the authority or the ability to control the minor child of her codefendant.

{¶60} We find Appellant's convictions were not against the manifest weight or against the sufficiency of the evidence.

IV.

{¶61} In the fourth assigned error, Appellant argues the trial court erred in imposing costs and a mandatory fine when Appellant filed an affidavit of indigency prior to sentencing.

{¶62} At the September 16, 2014 arraignment herein the trial court appointed counsel on behalf of Appellant making a finding she was indigent. Further, Appellant filed an affidavit of indigency on September 11, 2015. Via Order of September 17, 2015, the trial court imposed costs of the jury in the amount of $1,400 jointly and severally between Appellant and her codefendant.

{¶63} The State maintains Appellant failed to file her affidavit of indigency prior to sentencing; therefore, the trial court could not find her indigent, nor waive the mandatory fine under R.C. 2929.18(B)(1). The state cites the docket herein indicating the sentencing hearing was held on September 11, 2015, concluding at 2:47 pm. Appellant filed the

affidavit of indigency on September 11, 2015 at 2:49 pm. A review of Appellant's affidavit indicates the affidavit pertains to the appointment of counsel due to indigency.

**{¶64}** At sentencing, Appellant's counsel indicated an affidavit of indigency had been filed on Appellant's behalf for purposes of any mandatory fine or paying court costs. Tr. Vol. IV at 603. Specifically, the Court stated,

**{¶65}** THE COURT:***

On behalf of Tracy, the Court has heard the evidence. However, I would like to point out that I do have an affidavit of indigency demonstrating that she is indigent for purposes of any mandatory fine in this matter or paying court costs. I understand that the sentencing requires a mandatory term of incarceration.

***

Tr. at 603.

**{¶66}** At the sentencing hearing, the trial court did not address the issue of court costs or the imposition of a fine. Id.

**{¶67}** In *State v. Webb*, Richland No. 14-CA-85, 2015-Ohio-3318, this Court held,

Here, at the time of sentencing, the trial court's imposition of the mandatory fine was valid because Appellant failed to file an affidavit of indigency prior to sentencing pursuant to R.C. § 2929.18(B)(1).

Further, Ohio law does not prohibit a court from imposing a fine on an "indigent" defendant. That is, the filing of an affidavit of indigency does not automatically entitle a defendant to a waiver of a mandatory fine. *State*

*v. Knox,* 8th Dist. Cuyahoga Nos. 98713 and 98805, 2013–Ohio–1662, ¶ 36. Under Ohio law, a trial court must impose a mandatory fine unless (1) the offender files an affidavit of indigency prior to sentencing, and (2) "the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines." *State v. Gipson,* 80 Ohio St.3d 626, 634, 687 N.E.2d 750 (1998). In making its indigency determination, the court must consider both the offender's present and future ability to pay the fine. R.C. § 2929.19(B)(5).

Additionally, the trial court need not make an "affirmative finding that an offender is able to pay a mandatory fine." *Id.* at 635. Instead, "the burden is upon the offender to affirmatively demonstrate that he or she is indigent and is unable to pay the mandatory fine." *Id.* We review the trial court's decision to impose a fine on an indigent defendant for an abuse of discretion. *State v. Ficklin,* 8th Dist. Cuyahoga No. 99191, 2013–Ohio–3002, ¶ 5. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶68}** R.C. 2929.19(B)(5) reads,

(B)(5) Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the

court shall consider the offender's present and future ability to pay the amount of the sanction or fine.

**{¶69}** Upon review of Appellant's affidavit of indigency, the same does not provide sufficient information to support a finding of indigency with respect to the mandatory fine or court costs. Rather, the affidavit refers to indigency with respect to the appointment of counsel. The trial court indicated it had the affidavit of indigency orally on the record, but the same was not filed until after the sentencing hearing. Under these circumstances, we find the trial court did not abuse its discretion in imposing the mandatory fine and/or court costs in this matter.

**{¶70}** The fourth assignment of error is overruled.

**{¶71}** Appellant's convictions and sentence entered by the Richland County Court of Common Pleas are affirmed.

By: Hoffman, J.

Farmer, P.J.  and

Wise, J. concur