THE STATE OF OHIO; WILLIAMSON, APPELLEE, *v.* SANDLIN; MONTGOMERY, APPELLANT.

(No. WD-82-75—Decided July 29, 1983.)

*Mr. Daniel J. Herron,* for appellee Gale E. Williamson.

*Mr. Adrian P. Cimmerman,* for defendant Elvest P. Sandlin.

*Mr. Alan R. Mayberry,* assistant prosecuting attorney, for appellant Betty D. Montgomery.

*Mr. Gregory A. White,* urging reversal for *amicus curiae,* Ohio Prosecuting Attorneys Assn.

RESNICK, J. This is an appeal from the Wood County Court of Common Pleas. The defendant herein, Elvest P. Sandlin, was indicted for the criminal offense of felonious assault in violation of R.C. 2903.11.[1] Subsequently, defendant pleaded not guilty to said charge. On October 18, 1982, defendant filed a motion in the Wood County Court of Common Pleas requesting that court to direct the prosecutor to furnish defendant's attorney with a recent facial photograph of the alleged victim of defendant's alleged felonious assault. Defendant stated in his motion that such photograph was necessary for the adequate investigation and preparation of his case. The Wood County Prosecutor filed a memorandum in opposition to defendant's motion on October 19, 1982, and defendant filed his response to the state's opposing memorandum on October 21, 1982. In defendant's respon-

---

[1] Felonious assault is set forth in R.C. 2903.11, which states:

"(A) No person shall knowingly:

"(1) Cause serious physical harm to another;

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.

"(B) Whoever violates this section is guilty of felonious assault, a felony of the second degree."

sive memorandum, defendant asserted that the facial photograph of the alleged felonious assault victim was necessary in order to obtain witnesses who, although unfamiliar with the alleged victim's name, would, however, be able to recognize a picture of the alleged victim.

On October 28, 1982, the Honorable Gale E. Williamson, the trial judge presiding over this matter (and appellee herein), issued an order granting defendant's request that the state produce a recent facial photograph of the alleged victim of defendant's alleged felonious assault. Subsequently, the state filed a motion for reconsideration of said order and defendant then filed a memorandum opposing the state's reconsideration motion. On November 16, 1982, the trial court denied the state's motion for reconsideration of the trial court's prior order which directed the state to furnish defendant's counsel with said photograph.

The state requested an oral hearing regarding the trial court's denial of its motion for reconsideration; said request was granted and a hearing was conducted on November 23, 1982. The trial court, on December 1, 1982, filed its order denying the state's motion for reconsideration, and in an accompanying memorandum, the trial court expressly limited defense counsel's use of the photograph.

Subsequently, on December 10, 1982, defendant requested a continuance of the scheduled January 18, 1983, trial date, claiming that the state's continued failure to provide defendant's counsel with the

photograph of the alleged felonious assault victim, as ordered, rendered defense counsel incapable of adequately investigating the case and competently preparing a defense. The trial court conducted an oral hearing concerning defendant's motion for continuance on December 13, 1982, at which time Betty Montgomery, the Wood County Prosecutor and appellant herein, refused to comply with the order of the trial court. Consequently, Montgomery was found to be in contempt of an order of the trial court and was remanded to the custody of the Wood County Sheriff for transportation to the Wood County Jail.

On this same date (December 13, 1982), the state filed in this court a motion to stay the enforcement of the trial court's contempt order pending appeal of this matter, which this court granted. The cause is now before us on the merits.[2] At the outset, we recognize that the contempt issue must initially be reviewed on two levels. *State* v. *Kilbane* (1980), 61 Ohio St. 2d 201, 203 [15 O.O.3d 221]; *Cincinnati* v. *Cincinnati District Council 51* (1973), 35 Ohio St. 2d 197 [64 O.O.2d 129], certiorari denied (1974), 415 U.S. 994. First, appellant's conduct must be examined to determine whether such conduct constituted direct (R.C. 2705.01) or indirect (R.C. 2705.02) contempt. Second, we must review the record before us to ascertain whether appellee proceeded under the trial court's civil or criminal contempt powers. See *Kilbane, supra,* at 203. In the instant case, as in *Kilbane,*

---

[2] The order from which appellant appeals in the instant case is clearly interlocutory. Further, it is well-settled that only final, rather than interlocutory, orders may be presented to an appellate court for review. Section 3(B), Article IV, Ohio Constitution; R.C. 2505.02; R.C. 2505.03; *Logue* v. *Wilson* (1975), 45 Ohio App. 2d 132, 134 [74 O.O.2d 140]. The Supreme Court, however, has stated that where an otherwise non-appealable interlocutory order results in a judgment of contempt including imprisonment, said order is a final and appealable order and necessarily presents the appropriateness of the interlocutory order which is the underlying basis for the contempt adjudication to an appellate court for review. *Smith* v. *Bd. of Trustees* (1979), 60 Ohio St. 2d 13 [14 O.O.3d 162]. Thus, as *Smith, supra,* is controlling on this issue, this appeal is properly before the court. See R.C. 2705.09; *Chain Bike* v. *Spoke 'N Wheel, Inc.* (1979), 64 Ohio App. 2d 62 [18 O.O.3d 43].

*supra,* the trial judge summarily found appellant in contempt without specifying under what authority he (the trial judge) acted.

A court's direct contempt powers are set forth in R.C. 2705.01:

"A court, * * * may summarily punish a person guilty of misbehavior in the presence of * * * the court or judge as to obstruct the administration of justice."

Indirect contempt, however, is set forth in R.C. 2705.02, which states in relevant part:

"A person guilty of any of the following acts may be punished as for a contempt:

"(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of the court or an officer; * * *"

In reviewing the transcript of the hearing conducted on December 13, 1982, concerning defendant's request for a continuance of the trial date because of the state's continued failure to produce, as ordered, a recent facial photograph of the alleged victim of defendant's alleged felonious assault, appellant stated on the record in open court:

"* * * The State is in an uncomfortable posture that we [the state] cannot and will not be able to or do not wish to produce for the Court a photograph. No matter how long the continuance would continue, sir, we would not be producing that photograph — [*sic*]"

Although R.C. 2705.02(A) inferentially classifies an act of disobedience to a court as indirect contempt, R.C. 2705.02 does not limit the power of a court to determine, in its sound discretion, whether such a disobedient act constituted direct contempt. *Kilbane, supra,* at 204; *State* v. *Local Union 5760* (1961), 172 Ohio St. 75, 81 [15 O.O.2d 133]. In the case *sub judice,* appellant refused in open court and in the immediate view of the trial judge to produce the photograph as previously ordered. As such, appellant's conduct fell squarely within the direct

contempt provisions of R.C. 2705.01, and the limits which R.C. Chapter 2705 otherwise places on contempt sanctions were inapplicable. *Kilbane, supra,* at 204; *In re Roberts* (1963), 175 Ohio St. 123 [23 O.O.2d 410]; *Myers* v. *State* (1889), 46 Ohio St. 473. Further, appellee's summary treatment of appellant was well within the discretion of the trial court as provided in R.C. 2705.01.

Having determined that appellant was found by appellee to be in direct contempt, we must now focus our attention on whether such direct contempt was civil or criminal in nature. The Supreme Court observed in *Kilbane, supra,* at 204-207:

" 'Although there has never been a clear line of demarcation between criminal and civil contempts, it is usually said that offenses against the dignity or process of the court are criminal contempts, whereas violations which are on their surface offenses against the party for whose benefit the order was made are civil contempts. * * * Sentences for criminal contempt are punitive in nature and are designed to vindicate the authority of the court. * * * On the other hand, the purpose of sanctions in a case of civil contempt is to coerce the contemnor in order to obtain compliance with the lawful orders of the court.' * * * [Citations omitted.]

"* * *

"In summary, we note that if the contempt is civil the sanction is primarily coercive in nature and must allow for purging. If the contempt is criminal the sentence must be imposed primarily to vindicate the authority of the court and must be determinate. Conditions, however, may be attached to such a determinate sentence which allow for earlier termination."

The Supreme Court further expanded upon this distinction between criminal and civil contempt in *Brown* v. *Executive 200, Inc.* (1980), 64 Ohio St. 2d 250, 253-254 [18 O.O.3d 446]:

"While both types of contempt con-

tain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. * * * Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his pocket, * * * since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. * * * Therefore, to determine if the sanctions in the instant cause were criminal or civil in nature, it is necessary to determine the purpose behind each sanction: was it to coerce the appellees to obey the consent judgment decree, or was it to punish them for past violations?" (Citations omitted.)

Accordingly, the appropriate standard for appellate review of contempt sentences is an inquiry into the primary purpose which the trial court sought to achieve by imposing such a sentence. *Kilbane, supra,* at 206; see *Shillitani* v. *United States* (1966), 384 U.S. 364, 370. To accomplish this, review of the record is necessary in order to determine the purpose of the sentence. Although not dispositive of the trial court's primary purpose in imposing such a sentence, the actual sentence is, itself, some evidence of the objective which the trial court sought to accomplish. *Kilbane, supra,* at 206.

It can be argued that in the case at bar, appellant's continued and persistent refusal in open court to produce the photograph so ordered was tantamount to a defiant challenge to the trial court's authority, and as such, appellant's contempt would be criminal in nature, as the sentence was so imposed to vindicate the authority of the trial court for an open act of disobedience. Upon a thorough review

of the transcript from the continuance hearing conducted on December 13, 1982, however, it becomes readily apparent to this court that the contempt sanction which appellee issued was coercive in nature and allowed appellant to purge herself of the contempt.

"* * *

"Ms. Montgomery: The State is in an uncomfortable posture that we cannot and will not be able to or do not wish to produce for the Court a photograph. No matter how long the continuance would continue, sir, we would not be producing that photograph — [*sic*]

"Court: You do realize what you're saying to me?

"Ms. Montgomery: Yes, Your Honor, I think we do.

"* * *

"Court: So Ms. Montgomery, I can't help but to reiterate my decision to you and suggest to you that if you are once again telling me you are not going to respond to my order you don't give me any choice, I'm going to find you in contempt and place you in the Wood County Jail and, again, *the keys of the jail are in your pocket. When you say, yes, I will provide that photograph requested, you will be released.* Until then, I can't * * *. [Emphasis added.]

"* * *

"Court: On that basis I make a finding that the Wood County Prosecuting Attorney's Office, Prosecutor Betty Montgomery, is in contempt of an order of the Court and would remand you to the custody of the sheriff for transportation to our jail and, again, *you may be released at anytime upon your request and indication to me that the photograph will be provided.*" (Emphasis added.)

In addition to its primary purpose having been coercive in nature, the contempt sanction was conditional and nondeterminative. Furthermore, the contemnor was provided an opportunity to purge herself of the contempt. As such, it becomes abundantly clear to this court

that appellee, in finding appellant in contempt of court, proceeded under the trial court's civil contempt power.

It is the trial court's finding of direct civil contempt from which appellant appeals, stating as her first assignment of error:

"The trial court abused its discretion in holding the Wood County Prosecutor in contempt of court for failing to comply with an order of the court, which order was invalid as a matter of law."

Appellant argues that the trial court, in ordering her to produce a facial photograph of the defendant's alleged felonious assault victim, abused its discretion and therefore, said order is invalid.[3]

On three separate occasions, the trial court ordered appellant to produce the photograph as requested by the defendant.[4] Only in its memorandum decision filed December 1, 1982, however, did the trial court set forth a basis for its reasoning in ordering appellant to produce a facial photograph of the alleged victim of defendant's alleged felonious assault. The basis which the trial court set forth in its memorandum decision for its order was Crim. R. 16(B)(1)(c), which materially provides:

"Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial or were obtained from or belong to the defendant."

Appellant-prosecutor alternatively argues that: (1) the facial photograph

---

[3] Assuming *arguendo* that the trial court did abuse its discretion in so ordering appellant to produce said photograph, we do not agree with appellant's position that the resulting order is necessarily invalid as a matter of law. Clearly, the trial court had jurisdiction to enter the order which is the subject of this appeal. Once jurisdiction has been established, a court's authority to hear and determine the matter is perfect. The decision which follows, whether decided rightfully or wrongfully, correctly or erroneously, is but an exercise of the court's jurisdiction. As such, whether the decision is a correct one is immaterial to the force, effect and validity of the decision when and if that decision is *collaterally attacked.* See *Tari v. State* (1927), 117 Ohio St. 481, 490-498; *Sheldon's Lessee v. Newton* (1854), 3 Ohio St. 494. Provided that the court which entered the order had the jurisdiction to do so, the order is not void nor is it a mere nullity. Rather, the order is only voidable. Until and unless a voidable order is *directly attacked,* and its validity squarely questioned, such an order has the full efficacy and attendant consequences of an otherwise valid court order. *Tari, supra,* at 494.

The distinction which must be made is one that involves the haunting concepts of void and voidable. A void order is one entered by a court without jurisdiction to enter such an order. See *In re Green* (1962), 369 U.S. 689 [20 O.O.2d 422]. The order which results is necessarily a nullity which has no force, effect, or validity, and may be disregarded entirely or collaterally attacked. *Tari, supra,* at 490-494.

A voidable order, in contrast to a void order, is not a mere nullity and, therefore, not subject to *collateral attack.* Voidable orders, however, may be avoided by a *direct attack* and the procurement of the proper steps to have the order declared invalid. *Tari, supra,* at 494. See, generally, 32 Ohio Jurisprudence 2d 238-240, Judgments, Sections 33-34; 32A Ohio Jurisprudence 2d 261-262, Judgments, Section 722.

The order at issue herein, having been entered by a court of competent jurisdiction, is voidable rather than void, and is, therefore, subject to being declared invalid in the present direct attack.

[4] The trial court entered journal entries to this effect on October 28, 1982; November 16, 1982; and December 1, 1982.

which the defendant requested is not "available to or within the possession, custody or control of the state"; (2) if said photograph should be determined to be "available to or within the possession, custody or control of the state," said photograph is neither material to the preparation of the defendant's defense nor did the appellant-prosecutor intend to use said photograph at trial. If we should hold for appellant on any of her contentions, said holding would be dispositive of the appeal.

Initially, and most emphatically, both appellant and appellee concede that the photograph which defendant requested does not exist. Thus, the first issue presented to us is whether a nonexistent photograph of an alleged victim of crime can be considered to be "available to or within the possession, custody or control of the state" as contemplated by Crim. R. 16(B)(1)(c).

We commence our analysis by stating that if such a photograph as that requested existed but was in the possession of the police rather than the prosecutor, said photograph arguably could be said to be under the control of the state, as it has been stated that the police are part of the state and its prosecutorial machinery. *State* v. *Tomblin* (1981), 3 Ohio App. 3d 17, 18. Further, even if said photograph existed and was in actual possession of the prosecutor, Crim. R. 16(B)(1)(c) does not require the prosecutor to furnish the defendant with the photograph. What Crim. R. 16(B)(1)(c) does require, however, is that the prosecutor notify the defendant of its existence and of the state's intention to use it at trial. Further, the prosecutor must then honor the defendant's request, if made, to examine and copy said photograph. *State* v. *Emmons* (1978), 57 Ohio App. 2d 173, 176 [11 O.O.3d 173]. See *State* v. *Mitchell* (1975), 47 Ohio App. 2d 61, 73 [1 O.O.3d 181].

In *State* v. *Sims* (1981), 3 Ohio App. 3d 321, appellant claimed that the trial court committed prejudicial error in permitting a police officer to testify at trial concerning five photographs which were shown to the victim of appellant's aggravated robbery along with appellant's photograph in a photographic array. Appellant contended that the state violated Crim. R. 16 in failing to produce the photographs for inspection. The appellate court, in determining that no violation of Crim. R. 16 had occurred, stated that "[t]here is no indication in the record that the prosecutor ever had 'possession, custody or control' of the five photographs in issue." *Sims, supra,* at 326.

This court, in construing the phrase "available to, or within the possession, custody, or control of the state," as contained in Crim. R. 16(B)(1)(a)(ii), in *State* v. *Coates* (March 12, 1982), Wood App. No. WD-81-63, unreported, held that defendant's counsel is clearly entitled to a written statement or summary as provided for in Crim. R. 16; "however, if no such written statement or summary exists, then appellant's [defendant's] counsel's remedies are foreclosed under Rule 16."

Hypothetically, even if such a photograph did exist and was "available to or within the possession, custody or control of the state," there is no evidence in the record now before us which indicates that said photograph was either "intended for use by the prosecuting attorney as evidence at trial" or "obtained from or belonging to the defendant." *State* v. *Watson* (1975), 48 Ohio App. 2d 110, 111 [2 O.O.3d 79].

On the basis of the foregoing, we hold that a nonexistent photograph of an alleged victim of crime is not "available to or within the possession, custody or control of the state" as contemplated by Crim. R. 16(B)(1)(c) and thus, the prosecutor cannot be ordered to produce such a photograph. Appellant's first assignment of error is, therefore, well-taken.

Appellant states as her second assignment of error:.

"The trial court violated the Wood

County Prosecutor's right to due process of law by holding her in contempt of court and subsequently depriving her of her liberty for failing to comply with an order of the court, which was invalid, as a matter of law."

We again state that the trial court had jurisdiction to enter the order at issue herein.[5] As such, the order was not void *ab initio* nor was it a mere nullity. Rather, until invalidated by this court, the order was entitled to the full efficacy, force, and effect of an otherwise valid court order.

Appellant, in her second assignment of error, contends that she was deprived of due process of law and was further deprived of her liberty. These claims necessarily rise to the constitutional level, and it is well-settled that "no court should, * * * indulge the constitutional issue if the litigant is entitled to relief upon other grounds." *Burt Realty Corp.* v. *Columbus* (1970), 21 Ohio St. 2d 265, 269 [50 O.O.2d 491]; *Greenhills Home Owners Corp.* v. *Village of Greenhills* (1966), 5 Ohio St. 2d 207 [34 O.O.2d 420], certiorari denied (1966), 385 U.S. 836.

We do note, although parenthetically, that the case which appellant cites as controlling, *In re Schott* (1968), 16 Ohio App. 2d 72 [45 O.O.2d 168], was an original action in habeas corpus, rather than a direct appeal from a finding of contempt as in the case *sub judice.* In *Schott, supra,* the appellate court, sitting as the court of first instance, determined that petitioner had been deprived of due process of law and of his liberty. It is our belief, however, that the differences in the procedural postures of the *Schott* case and the present one are significantly distinguishable so as to render *Schott, supra,* not necessarily controlling in this instance.

Thus, as other grounds were dispositive of this appeal, we adhere to the rule not to decide constitutional questions unless absolutely necessary. *State, ex rel. Hofstetter,* v. *Kronk* (1969), 20 Ohio St. 2d

117, 119 [49 O.O.2d 440]; *Euclid* v. *Heaton* (1968), 15 Ohio St. 2d 65, 70 [44 O.O.2d 50]; *Belden* v. *Union Central Life Ins. Co.* (1944), 143 Ohio St. 329 [28 O.O. 295]; *State, ex rel. Herbert,* v. *Ferguson* (1944), 142 Ohio St. 496 [27 O.O. 415]. The second assignment of error is, therefore, not well-taken.

We recognize, as does appellee, that trial courts are given great latitude in supervising pretrial discovery. *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 42 [3 O.O.3d 18], vacated on other grounds (1978), 438 U.S. 911. This latitude, however, must be limited by some boundaries, and those boundaries are prescribed in Crim. R. 16. As set forth in Crim. R. 1(B), the intent of the Ohio Rules of Criminal Procedure, as enacted on July 1, 1973 (Crim. R. 59[A]), was to provide for the just determination of every criminal proceeding. Their application and construction is to secure, *inter alia,* the fair, impartial, speedy, and sure administration of justice together with simplicity in procedure. We sincerely believe that our decision today fully comports with the intent of the Criminal Rules.

The trial court's finding that appellant was in contempt of court is hereby reversed and appellant is ordered discharged. The orders of the trial court which compel appellant to produce a nonexistent facial photograph of the alleged victim of defendant's alleged felonious assault are hereby vacated and held for naught.

Cause remanded to the Wood County Court of Common Pleas for further proceedings not inconsistent with this opinion. Pursuant to App. R. 24, no costs are to be assessed against any party to the appeal decided herein.

*Judgment reversed and cause remanded.*

CONNORS, P.J., and HANDWORK, J., concur.

---

[5] See footnote 3, *supra.*