OPINION
These are accelerated appeals taken from final judgments of the Juvenile Division of the Geauga County Court of Common Pleas. Appellant, Christine Marquette, appeals from the juvenile court's imposition of jail time on her after being held in contempt of court.
On February 18, 1998, the Geauga County Department of Human Services ("Department of Human Services") filed a delinquency complaint against appellant's minor daughter pursuant to R.C.2151.02(B). The girl pled true to both counts contained in the complaint, and the juvenile court adjudged her to be a delinquent child at an adjudicatory hearing on April 9, 1998. At the subsequent dispositional hearing, the juvenile court sentenced appellant's daughter to the commitment of a youth detention facility.
Beyond this, the juvenile court also granted the Department of Human Services protective supervision over appellant's daughter. The Department of Human Services drafted a case plan to address the family problems that gave rise to the girl's unruly behavior. The provisions of the case plan were directed at both appellant and her daughter. With regard to appellant, the case plan required that she refrain from consuming alcohol, attend Alcoholics Anonymous (AA) meetings, attend an aftercare treatment program, and submit to periodic drug screenings upon the request of the Department of Human Services. The juvenile court adopted the case plan as an order of the court.
The record does not reflect that appellant ever raised any issue as to whether the juvenile court had personal jurisdiction over her. It is apparent that appellant simply acquiesced to the juvenile court's exercise of such jurisdiction over her after being served with a copy of the summons and delinquency complaint that were filed against her daughter.
The matter came on for a status hearing on July 22, 1998 in order to determine whether any progress had been made in achieving the objectives set forth in the case plan. Appellant, her daughter, and representatives from the Department of Human Services were in attendance. During the course of this proceeding, the suggestion was raised that appellant had continued to consume alcohol and had failed to comply with other aspects of the case plan.
Based on this information, the juvenile court determined that appellant should be required to show cause as to why she should not be held in contempt of court for failure to comply with the case plan.[1] At the conclusion of the status hearing, the juvenile court informed appellant about the unresolved question of her contempt and scheduled a show cause hearing for August 26, 1998.
On the day of the show cause hearing, appellant appeared and made an oral request that the matter be delayed so that she could retain counsel. The juvenile court admonished appellant for failing to file a timely motion for a continuance, but nevertheless continued the hearing.
Appellant retained an attorney and was, consequently, represented by counsel when the matter proceeded on September 17, 1998. As mentioned earlier, caseworkers from the Department of Human Services had previously informed the juvenile court that appellant violated the terms of the court-ordered case plan during the status conference on July 22, 1998. Specifically, the Department of Human Services alleged that appellant consumed alcohol and failed to submit to a drug screen. There is, however, nothing in the record to indicate that this was an evidentiary hearing, in addition to being a status conference.
During the show cause hearing, appellant was given the opportunity to be heard in response to the allegations that had previously been brought to the juvenile court's attention. Appellant, however, offered no explanation for her alleged failure to comply with the prior orders of the juvenile court. Further, there was no objection to the juvenile court's reliance upon the allegations made to the court during the earlier status conference. In fact, appellant's counsel even conceded that she had violated the case plan because she drank alcohol on at least one occasion and she had not yet submitted to the drug test.
At the conclusion of the show cause proceeding, the juvenile court found appellant to be in contempt of court and ordered her to serve thirty days in the Geauga County Safety Center. The juvenile court suspended twenty-five days upon the condition that appellant henceforth comply with the provisions of the case plan. As for the five days that were not suspended, the juvenile court ordered that appellant report to the Geauga County Safety Center at 9:00 a.m. the following day, to wit: September 18, 1998.
Appellant did not report to jail as ordered. Consequently, the juvenile court issued a bench warrant for her arrest. On September 25, 1998, a different attorney filed an entry of appearance indicating that he was the newly retained counsel acting on behalf of appellant. This attorney also filed a document captioned "Motion to Present Christine Marquette for Sentencing" in which he requested that appellant be allowed to appear for sentencing on September 28, 1998.
Appellant appeared in court on September 28, 1998, after turning herself in on the bench warrant. She was represented by her new attorney. After again affording appellant the opportunity to be heard through counsel, the juvenile court found her to be in contempt of court for failing to report to the Geauga County Safety Center on September 18, 1998. As punishment for this second act of contempt, the juvenile court ordered appellant to serve five additional days of the previously suspended jail time. Appellant, therefore, had to serve a total of ten days in jail in the wake of the second contempt finding, with the remainder of the original thirty-day sentence suspended on the condition that appellant thereafter comply with the case plan.
Appellant filed timely notices of appeal from the September 17 and September 28, 1998 judgment entries. This court stayed the sentences imposed by the juvenile court upon motion filed by appellant. Thereafter, we sua sponte consolidated the appeals for purposes of disposition.
On appeal, appellant now asserts the following assignments of error:
 "[1.] The trial court erred in finding Christine Marquette in contempt of court and imposing a jail sentence by journal entry filed September 17, 1998.
 "[2.] The trial court erred in finding Christine Marquette in contempt of court and imposing additional jail time of [sic] its original suspended commitment as a consequence for such contempt of court by journal entry filed September 28, 1998."
 I.
At the outset, it is necessary to review the law governing contempt. In its simplest terms, contempt of court is disobedience of an order of a court. The Supreme Court of Ohio has defined it as "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." WindhamBank v. Tomaszczyk (1971), 27 Ohio St.2d 55, paragraph one of the syllabus. See, also, Denovchek v. Bd. of Trumbull Cty. Commrs.
(1988), 36 Ohio St.3d 14, 15; South Euclid Fraternal Order ofPolice, Lodge 80 v. D'Amico (1987), 29 Ohio St.3d 50, 52. The contempt power is inherent in a court because it is necessary to the exercise of the judicial function. Denovchek,36 Ohio St.3d at 15; Zakany v. Zakany (1984), 9 Ohio St.3d 192, 194; State exrel. Shoop v. Mitrovich (1983), 4 Ohio St.3d 220, 221.
A finding of contempt must be reviewed on two different levels.State v. Kilbane (1980), 61 Ohio St.2d 201, 203. First, the contemptuous conduct must be examined to see whether it constituted a direct or indirect contempt. Second, the trial court's treatment of the matter must be analyzed in order to ascertain whether the contemnor was dealt with under the court's civil or criminal contempt powers. Id.; State v. Sandlin (1983),11 Ohio App.3d 84, 85.
A court's direct contempt powers are set forth in R.C. 2705.01:
 "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."
The Supreme Court of Ohio has also observed that direct contempt is misbehavior "committed in the presence of or so near the court as to obstruct the due and orderly administration of justice, and punishment therefor may be imposed summarily without the filing of charges or the issuance of process." In re Lands
(1946), 146 Ohio St. 589, 595. Direct contempt usually involves some form of misbehavior in the actual courtroom. The concept, however, has been expanded to include challenges to judicial authority that are directed at an officer of the court who is engaged in the execution of the court's business. See, e.g., Statev. Local Union 5760 (1961), 172 Ohio St. 75, 82, overruled in part on other grounds.
An indirect contempt of court is one "committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice." In re Lands,146 Ohio St. at 595. Since indirect contempt takes place outside of the courtroom, the court is usually not aware of the contemptuous act when it occurs. R.C. 2705.02 provides a list of acts that may constitute indirect contempt. For purposes of the present appeal, the relevant provision reads as follows:
 "A person guilty of any of the following acts may be punished as for a contempt:
 "(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer[.]"
It is well-established that direct contempt may be punished summarily by a trial court. Kilbane,61 Ohio St. 2d at 204, fn. 4. By contrast, where a judge has no personal knowledge of the alleged act of contempt because of its commission beyond the court's actual physical presence, the court should strictly adhere to the procedure outlined in R.C. 2705.03 requiring a written charge, notice to the defendant of the charge, the opportunity for the defendant to be represented by counsel, and an adversary hearing upon the issues.Local Union 5760, 172 Ohio St. at 82.
Contempt is further classified as criminal or civil depending on the character and purpose of the punishment. Denovchek,36 Ohio St. 3d at 16; Brown v. Executive 200,Inc. (1980), 64 Ohio St.2d 250,253. Criminal contempts are comprised of those offenses against the dignity or process of the court, whereas civil contempts are those violations which are on the surface offenses against the party for whose benefit the order was made.Kilbane, 61 Ohio St.2d at 205; Local Union 5760,172 Ohio St. at 82-83; Sandlin, 11 Ohio App.3d at 86. Sentences for criminal contempt are punitive in nature and are designed to vindicate the authority of the court. The purpose of sanctions for civil contempt is to coerce the contemnor into complying with the lawful orders of the court. Kilbane, 61 Ohio St.2d at 205; Local Union5760, 172 Ohio St. at 82-83; Sandlin, 11 Ohio App.3d at 86.
Contempt may be punished by a fine, imprisonment, or both.Cleveland v. Ramsey (1988), 56 Ohio App.3d 108, 110. If the contempt is civil, the sanction is primarily coercive in nature, and the contemnor must have the opportunity to purge the contempt.In re Purola (1991), 73 Ohio App.3d 306, 312; Ramsey,56 Ohio App. 3d at 110; Tucker v. Tucker (1983), 10 Ohio App.3d 251, 252. Fines and prison sentences are conditional, and the contemnor is said to carry the keys to his own prison cell because he will be freed if he agrees to do as ordered by the court. Brown,64 Ohio St. 2d at 253. Once the contemnor complies with the court's order, any sanctions will be discontinued because the remedial objective has been achieved. In re Purola, 73 Ohio App.3d at 312; Ramsey,56 Ohio App.3d at 110.
If the contempt is criminal, the sentence is imposed to vindicate the authority of the court. Denovchek,36 Ohio St.3d at 16; Brown, 64 Ohio St.2d at 254; Kilbane, 61 Ohio St.2d at 205. Fines and prison terms are meted out as punishment for the completed act of disobedience. Brown, 64 Ohio St.2d at 254;Sandlin, 11 Ohio App.3d at 87. As a general matter, such punishment must be determinate. Kilbane, 61 Ohio St.2d at 207. Conditions, however, may be attached which can allow for the earlier termination of a determinate sentence. Id.
It is uncontroverted that criminal contempt must be proved beyond a reasonable doubt. Brown, 64 Ohio St.2d at syllabus;Ramsey, 56 Ohio App.3d at 111. In cases of civil contempt, a majority of appellate courts in Ohio, including this court, have held that the burden of proof is clear and convincing evidence. See Newbury Twp. Bd. of Trustees v. Pracker (Sept. 12, 1986), Geauga App. No. 1249, unreported, at 10, 1986 Ohio App. LEXIS 8262. See, also, Sancho v. Sancho (1996), 114 Ohio App.3d 636,642; Carroll v. Detty (1996), 113 Ohio App.3d 708, 711; Contex,Inc. v. Consol. Technologies, Inc. (1988), 40 Ohio App.3d 94, 95;Whitehall v. Bambi Motel, Inc. (Dec. 18, 1997), Franklin App. No. 97APC04-539, unreported, at 2, 1997 WL 781900; Rudduck v. Rudduck
(June 16, 1999), Licking App. No. 98CA85, unreported, at 11, 1999 Ohio App. LEXIS 2808.
At least one appellate court, however, has concluded that the standard of proof for civil contempt is simply a preponderance of the evidence. See Conley v. Conley (Apr. 17, 1991), Summit App. No. 14798, unreported, at 11, 1991 Ohio App. LEXIS 1737, citingNardone v. Nardone (1989), 63 Ohio App.3d 798, 801. Although it has expressly articulated the degree of proof required for criminal contempt, the Supreme Court of Ohio has never definitively stated the level of proof needed to sustain a finding of civil contempt.[2]
The appropriate standard of review in contempt cases is to inquire into what the trial court primarily sought to accomplish by imposing the sentence. Kilbane, 61 Ohio St.2d at 206; Sandlin,11 Ohio App.3d at 87. A review of the entire record must be made to determine the purpose of the sentencing court. The penalty imposed by the trial court is some evidence of the trial court's objective in sanctioning the contemnor, but it is not entirely dispositive of the issue. Kilbane, 61 Ohio St.2d at 206; Sandlin,11 Ohio App.3d at 87.
 II.
Having reviewed the law of contempt, we now wish to discuss an issue which this court raised during oral arguments in the present appeal, to wit: the evidentiary basis underlying the first contempt finding. After raising the issue, we allowed appellant and the Department of Human Services to submit supplemental briefs focusing on the quantum and the quality of the evidence supporting the initial finding of contempt.
Appellant responded to the issue, but the Department of Human Services did not. In her supplemental brief, appellant points out that neither she nor anyone else ever actually testified that she consumed alcohol or otherwise violated the case plan during the September 17, 1998 show cause hearing. As such, appellant maintains that there was no evidence to sustain the burden of proof required for a finding of contempt.
As previously indicated, the suggestion that appellant was not in compliance with the terms of the court-ordered case plan first arose at the status review on July 22, 1998. This was apparently not an evidentiary hearing, but rather was an informal proceeding to determine whether appellant and her daughter had made any progress in achieving the objectives set forth in the case plan. The record does not contain a transcript of this proceeding, but it appears that the probation officer and social workers in attendance alleged that appellant consumed alcohol and may have failed to comply with other aspects of the case plan. Consequently, the juvenile court informed appellant that she might be in contempt and scheduled the matter for a show cause hearing.
Further, no substantive evidence was introduced during the show cause hearing on September 17, 1998. The transcript reveals that appellant was never called to the witness stand nor questioned about whether she had used alcohol, whether she had neglected to submit to the required drug screen, or whether she had otherwise failed to comply with the case plan. Moreover, the Department of Human Services did not call any witnesses to testify with regard to appellant's allegedly contemptuous conduct.
Instead, the juvenile court proceeded as if proof of appellant's contempt had already been established at the July 22, 1998 status hearing. As a result, at the show cause hearing the juvenile court simply afforded appellant the chance to explain why she should not be held in contempt of court.
Notwithstanding the lack of substantive evidence introduced during the September 17, 1998 hearing, there is no record of any formal objection to the use of the information brought forth during the July status conference. Indeed, as mentioned previously, appellant's counsel conceded at the show cause hearing that she was in violation of the juvenile court's prior orders. For instance, counsel agreed that appellant had not submitted to the required drug test. Beyond this, on two different occasions, counsel expressly indicated that appellant had in fact admitted to consuming alcohol prior to the show cause hearing. After conceding these points, counsel essentially asked the juvenile court to allow appellant to purge herself of the contempt by coming into compliance with the case plan.
This raises the question of whether these statements rose to the level of judicial admissions, thereby dispensing with the requirement that the Department of Human Services come forward with formal proof demonstrating that appellant had violated various aspects of the case plan. It is uncontroverted that in-court statements made by counsel may constitute judicial admissions under the right circumstances. See, e.g., Hake v.Wiedemann Brewing Co. (1970), 23 Ohio St.2d 65, 68; Gray v.Baughman Twp. Trustees (Apr. 8, 1996), Stark App. No. 1995 CA 00173, unreported, at 11-12, 1996 Ohio App. LEXIS 2059. See, also, Padden v. Herron (Dec. 24, 1998), Lake App. No. 97-L-223, unreported, at 5, 1998 WL 964545. This court, however, has previously held that statements by counsel do not rise to the level of a judicial admission where there is no indication that the statement was intended to dispense with formal proof of material facts. Holeski v. Lawrence (1993), 85 Ohio App.3d 824,833.
Upon reviewing the transcript of the show cause hearing, we conclude that counsel's statements were, indeed, judicial admissions given the context in which they were made. In effect, appellant's strategy at the show cause hearing was to admit the violations of the case plan, but then throw herself on the mercy of the juvenile court by asking for additional time in which to comply with the court's previous orders. Given this strategy, counsel could hardly plead for further time for appellant to comply without first acknowledging her misdeeds.
In concluding that evidence of appellant's contempt was effectively admitted at the September 17, 1998 hearing, we must reiterate that the juvenile court did afford appellant the opportunity to be heard. Rather than speaking for herself, however, appellant authorized her attorney to speak on her behalf. Given that appellant was represented by counsel and was offered the chance to be heard, any potential due process concerns were obviated.
Thus, we hold that the statements made by appellant's counsel represented judicial admissions. Appellant's strategy of allowing her attorney to concede the contempt dispensed with the requirement that formal proof actually be introduced at the show cause hearing.
 III.
We turn now to the errors assigned by appellant in the case subjudice. In her first assignment of error, appellant takes issue with the juvenile court's September 17, 1998 finding of contempt. As described previously, the juvenile court sentenced appellant to serve thirty days in the Geauga County Safety Center by way of the September 17, 1998 entry. Twenty-five of those days were suspended on the condition that appellant comply with the specific requirements of the case plan in the future.
Appellant argues that this finding by the juvenile court should be characterized as indirect civil contempt. If it is viewed as civil contempt, then appellant contends that the juvenile court erred by not allowing her an absolute opportunity to purge the contempt. In other words, appellant maintains that the entire thirty-day sentence should have been conditional and that the juvenile court erred by ordering her to serve a mandatory five days in jail, regardless of whether she took steps to come into compliance with the case plan.
After reviewing the entire record, we disagree with appellant's attempt to classify the September 17, 1998 entry as a finding of indirect civil contempt. Rather, it was clearly a case of indirect criminal contempt.
As an initial matter, we concur that the contemptuous conduct referenced in the September 17, 1998 order was indirect in nature. The contempt was indirect because it was committed outside the presence of the juvenile court when appellant violated the provisions of the court-ordered case plan by drinking alcohol, by failing to submit to the drug screen, and by otherwise not complying with its terms.
We part company with appellant on the question of whether the contempt was civil or criminal. Upon review, it is obvious that the juvenile court was making a finding of criminal contempt. The contempt was criminal because the thirty-day jail sentence was punitive in nature and was designed to vindicate the authority of the juvenile court. By imposing this sentence, the juvenile court was punishing appellant for her past refusal to obey a court order. The jail time was punishment for appellant's completed act of disobedience.
The juvenile court was well within its authority to sentence appellant to thirty days in jail for her indirect criminal contempt. Since the juvenile court treated the disobedience as criminal in nature, it was under no obligation to allow appellant the opportunity to purge her contempt.
Appellant offers an alternative argument in anticipation that this court might deem the juvenile court's September 17, 1998 finding to be indirect criminal contempt, as opposed to indirect civil contempt. Specifically, appellant suggests that she did not possess the requisite intent to be found in criminal contempt of court. Again, we disagree.
The classification of the contempt determines whether intent is an element of the offense. In cases of indirect criminal contempt, intent is an essential element. In re Purola,73 Ohio App. 3d at 312; Ramsey, 56 Ohio App.3d at 111; In re Carroll
(1985), 28 Ohio App.3d 6, 10. The intent of the contemnor is irrelevant in cases of direct criminal contempt committed in the court's presence. Likewise, in the context of civil contempt, there is also no requirement that the violation of a court order be intentional.
In the instant case, the juvenile court found appellant to be in indirect criminal contempt. As such, it had to be shown beyond a reasonable doubt that appellant purposefully, willfully, or intentionally violated a prior court order, to wit: the juvenile court's order that appellant abide by the provisions of the case plan. To that end, the record show that appellant was notified and involved in all aspects of the delinquency proceeding from its inception. No where does the record reflect that appellant ever raised the defense that she did not know about the plan or that she was required to abide by the plan.
We previously concluded that appellant essentially admitted, through her counsel's statements on her behalf at the show cause hearing on September 17, 1998, that she had violated the case plan by consuming alcohol and by failing to submit to the mandatory drug screen. Appellant offered no explanation as to how her behavior in this regard could have been anything other than intentional. In light of this, the requisite intent to disobey a court order was established.
The juvenile court's September 17, 1998 order constituted a finding of indirect criminal contempt, thereby making the question of purging inapposite. Moreover, the elements of such contempt, including intent, were proven beyond a reasonable doubt. The first assignment is meritless.
 IV.
In her second assignment of error, appellant challenges the validity of the September 28, 1998 finding of contempt. According to appellant, this entry found her to be in indirect contempt of the September 17, 1998 order. Appellant claims that the second finding of contempt was improper because she had not done anything to violate the language of the first contempt citation. Beyond this, appellant maintains that the juvenile court erred by unsuspending five additional days of jail time because she had not engaged in any conduct between September 17 and September 28, 1998 which transgressed the conditions attached to the partial suspension of the original sentence (i.e., she had not missed an AA meeting, had not failed to submit to a drug screen, etc.).
Appellant is wrong on both fronts. The September 28, 1998 finding of contempt was predicated on appellant's blatant violation of the following language contained in the September 17, 1998 entry:
 "The Court orders that Ms. Marquette begin serving her commitment to the Geauga County Safety Center on the 18th day of September, 1998 at 9:00 A.M. [sic]."
Appellant did not report to jail as ordered by the juvenile court. When appellant reappeared on September 28, 1998 after surrendering to the bench warrant, the juvenile court properly found her to be in indirect, criminal contempt of court.
The contempt was indirect because it stemmed from appellant's disobedience of a lawful order of the juvenile court. The contempt was criminal because the five-day jail sentence was punitive in nature and designed to vindicate the authority of the juvenile court. By imposing the sentence, the juvenile court was punishing appellant for a completed act of disobedience, to wit: her refusal to obey the court's order to report to the Geauga County Safety Center on September 18, 1998. Appellant's conduct in this regard was in contravention to and defiance of the juvenile court's authority.
The juvenile court could have imposed an independent five-day jail sentence on appellant for this act of contempt. Appellant, however, already had twenty-five days in jail suspended over her head due to the first contempt. As a result, the juvenile court simply unsuspended five of those days as punishment for the second contempt. The juvenile court was well within its discretion to select this sentencing option, as opposed to meting out a new and distinct sentence of five days in jail.
The juvenile court's September 28, 1998 finding of contempt properly punished appellant for her failure to report to the Geauga County Safety Center. The fact that the juvenile court opted to impose five days of the previously suspended jail time, instead of handing out a "separate" five-day sentence, was immaterial and had absolutely no prejudicial effect on appellant. The second assignment is not well founded.
Based on the foregoing analysis, the assignments of error are without merit. Accordingly, the judgment of the juvenile court is affirmed.
FORD, P.J., concurs,
O'NEILL, J., dissents.
[1] It should be noted that the juvenile court possessed the statutory authority to find appellant in contempt for failure to adhere to the provisions of the case plan. Under R.C. 2151.412(E)(1), "[a]ll parties, including the parents, guardian, or custodian of the child, are bound by the terms of the journalized case plan. A party that fails to comply with the terms of the journalized case plan may be held in contempt of court." As the parent of the alleged delinquent child, appellant was a party to the delinquency proceeding and was subject to the provisions of the case plan adopted by the juvenile court. See, generally, Juv.R. 2(X) (defining "party" to mean "a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, * * * the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court"). Thus, the juvenile court was not lacking subject matter jurisdiction to effect the contempt findings in question.
[2] The Supreme Court's decision in Brown v. Executive200, supra, is often cited for the proposition that civil contempt requires clear and convincing evidence. In actuality, however, the Brown court never really stated with any degree of clarity that a finding of civil contempt must be supported by clear and convincing evidence as a matter of law, instead of preponderance thereof.