OPINION
{¶ 1} In this accelerated appeal, submitted on the record and briefs, appellant, Paul W. Bowers, appeals the judgment of the Lake County Court of Common Pleas, sentencing him to 30 days in the Lake County Jail for violation of a Civil Stalking Protection Order ("CSPO") issued by the court on April 26, 2005. For the reasons that follow, we affirm the judgment of the lower court.
 {¶ 2} On April 13, 2005, appellee, Deborah Lyons, filed a petition in the Lake County Court of Common Pleas for a CSPO, against Bowers pursuant to R.C. *Page 2 2903.214. The complaint alleged that Bowers knowingly caused or attempted to cause physical harm to Lyons, his then fiancée, a violation of Ohio's Domestic Violence statute, R.C. 2919.25(A). Attached to the complaint was a police report given by Lyons to Officer Bramley of the Mentor-on-the-Lake Police Department. On April 26, 2005, the court granted the CSPO following a full hearing. The order listed Lyons, her two children, her parents, and her sister as protected persons under the order. Bowers was also ordered to undergo drug abuse counseling. The order was made effective for one year from the date of its issuance.
 {¶ 3} On February 27, 2006, Bowers filed a motion to modify the CSPO.
 {¶ 4} On February 28, 2006, Lyons filed a first motion to show cause, alleging that Bowers was in contempt of the court's CSPO for repeatedly contacting and harassing her via telephone, fax, and e-mail. The motion also alleged that Lyons had reason to believe that Bowers continued to consume drugs and alcohol in violation of the order. Attached to the motion were an affidavit and various police reports from the Mentor-on-the-Lake and Eastlake police departments.[1] On the same date, Lyons filed a motion to extend the CSPO for an additional period of five years from the expiration date of the original order.
 {¶ 5} On April 14, 2006, the trial court held a hearing on the aforementioned motions. As a result of the hearing, the parties entered into an agreed order, which was journalized on April 17, 2006. The agreement provided as follows:
 {¶ 6} "1. The Civil Protection Order of April 26, 2005 is hereby extended for an additional period of five years (from April 14, 2006). *Page 3 
 {¶ 7} "* * *
 {¶ 8} "3. Paul R. Bowers admits that he is in contempt of the Civil Protection Stalking Order issued by this Court on April 26, 2005.
 {¶ 9} "4. Paul R. Bowers shall pay attorney fees in the sum of $1,000 on or before April 17, 2006.
 {¶ 10} "5. This matter shall be scheduled for a sentencing hearing on June 1, 2006 * * *.
 {¶ 11} "6. The Clerk of Courts is hereby ordered to serve a copy of this order on all law enforcement."
 {¶ 12} On June 6, 2006, the trial court issued a judgment of sentence, ordering Bowers to serve a term of thirty days in the Lake County Jail and fined $250.00 for violating the CSPO.
 {¶ 13} Bowers timely appealed the judgment of sentence. This court stayed execution of Bowers' sentence pending the outcome of this appeal.
 {¶ 14} Bowers raises the following as his sole assignment of error:
 {¶ 15} "The trial court erred to the prejudice of the appellant by sentencing the appellant to 30 days jail time without first providing appellant an opportunity to purge his indirect civil contempt."
 {¶ 16} Bowers argues that the contempt in this case was a civil contempt since the CSPO was granted for the benefit of Lyons, and thus, he should have been provided the opportunity to purge, prior to being sentenced to jail. We disagree.
 {¶ 17} Contempt of court has been variously defined as "disobedience of an order of a court," and "conduct which brings the administration of justice into disrespect, *Page 4 
or which tends to embarrass, impede or obstruct a court in the performance of its functions." Denovchek v. Bd. of Trumbull Cty.Commrs. (1988), 36 Ohio St.3d 14, 15. Contempt powers are considered inherent in the court, and considered as necessary to the proper exercise of judicial functions. Id. Since the primary purpose of the contempt proceedings is to preserve the authority and proper functioning of the court, we review the trial court's decisions in contempt proceedings under an abuse of discretion standard. Id. at 16; Unger v.Unger, 12th Dist. No. CA2003-10-013, 2004-Ohio-7136, ¶ 26 (citations omitted). An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990),53 Ohio St.3d 161, 169 (citation omitted).
 {¶ 18} R.C. 2705.05 prescribes the penalties for contempt, and states that "[f]or a first offense, [the trial court may impose] a fine of not more than two hundred fifty dollars, a definite term of not more than thirty days in jail, or both." R.C. 2705.05(A) (1 ).
 {¶ 19} It is well-settled that contempt proceedings are considered sui generis, in that they are considered neither purely civil nor criminal.Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253 (citations omitted); Denovchek, 36 Ohio St.3d, at 16. However, courts have found it necessary to classify contempt proceedings as either civil or criminal in nature. Brown, 64 Ohio St.2d. at 252, citing State v. Kilbane (1980),61 Ohio St.2d 201, 205.
 {¶ 20} Appellate review of a trial court's finding of contempt requires a two-tiered analysis: First, "the contemptuous conduct must be examined to see whether it constituted a direct or indirect contempt. Second, the trial court's treatment of the matter must be analyzed in order to ascertain whether the contemnor was dealt with *Page 5 
under the court's civil or criminal contempt powers." In re Cox (Dec. 23, 1999), 11th Dist. Nos. 98-G-2183 and 98-G-2184, 1999 Ohio App. LEXIS 6266, at *8, citing Kilbane, 61 Ohio St.2d at 203; State v. Sandlin
(1983), 11 Ohio App.3d 84, 85.
 {¶ 21} We agree with Bowers that his admitted acts constitute an indirect contempt. An indirect contempt is one which is "committed outside the presence of the court, but which also tends to obstruct the due and orderly administration of justice." In re Lands (1944),146 Ohio St. 589, 595; Cox, 1999 Ohio App. LEXIS 6266, at *9. R.C. 2705.02 to R.C. 2705.10 provide guidance to courts with regard to matters constituting indirect contempt. In re Caron, (2000),110 Ohio Misc.2d 58, 102. R.C. 2705.02 classifies certain acts which may constitute indirect contempt, and prohibits, in relevant part, the "[disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer." R.C. 2705.02(A).
 {¶ 22} However, we disagree that Bowers' contempt was civil rather than criminal. Courts distinguish civil and criminal contempt in several important respects. "While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment." Brown, 64 Ohio St.2d at 253 (citations omitted);Shillitani v. United States (1966), 384 U.S. 364, 369.
 {¶ 23} If the sanctions are primarily for reasons benefiting the complainant and are remedial and coercive in nature, the contempt is civil in nature. Brown, 64 Ohio St.2d at 253; Denovchek,36 Ohio St.3d at 16. In the context of a civil contempt proceeding, prison sentences are conditionally imposed, and "the contemnor is said to carry the keys of his prison in his own pocket," and the sentence will be suspended or *Page 6 
terminated if the contemnor complies with the court's order.Brown, 64 Ohio St.2d at 253 (ciatation omitted); see also McComb v.Jacksonville Paper Co. (1949), 336 U.S. 187, 191 ("Civil * * * contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.")
 {¶ 24} Criminal contempt, on the other hand, implies a purely punitive aspect. It is not "a remedy coercive in its nature," but rather, is "punishment for the completed act of disobedience * * * to vindicate the authority of the law and the court." Brown, 64 Ohio St.2d at 254;Bd. of Trustees v. Pracker (Sept. 12, 1986), 11th Dist. No. 1249, 1986 Ohio App. LEXIS 8262, at *6-*7. Thus, a key aspect of a civil contempt as opposed to one that is purely criminal is the opportunity for the contemnor to purge himself of the contempt sanction, and the discontinuation of the sanction once compliance is achieved. In rePurola (1991), 73 Ohio App.3d 306, 312, (citations omitted).
 {¶ 25} In the instant matter, there are no "damages or losses sustained by reason of noncompliance" that are compensable. The specific term of the CSPO violated by Bowers was clear. Bowers was to have no contact with Lyons or other protected persons. Bowers admitted in the agreed entry that he violated this term of the CSPO. There exists no practical opportunity for Bowers to purge or cure his contempt based on his completed act of disobedience. Thus, the court's punishment for his contempt was criminal in nature, i.e., purely punitive, and meant to vindicate the authority of the court.
 {¶ 26} Our conclusion is supported by a reading of R.C. 2903.214(K), which states that "[a] person who violates a protection order issued under this section is subject to * * * [criminal prosecution for a violation of section 2919.27 of the Revised *Page 7 
Code * * * [or] [p]unishment for contempt of court." R.C.2903.214(K)(1)(a) and (b); cf. State v. Vanselow (1991),61 Ohio Misc.2d 1, 8 (defendant's sentence of thirty days in jail for violation of a temporary protection issued under R.C. 3113.31 constituted "criminal punishment, and its characterization as a `civil matter' mis[took] form for substance"); see also Cheh, Constitutional Limits on Using Civil Remedies To Achieve Criminal Law Objectives: Understanding and Transcending the Civil-Criminal Law Distinction (1991), 42 Hastings L.J. 1325, 1405 (contempt sanctions for violations of protective orders are criminal in nature).
 {¶ 27} Based upon the foregoing, we cannot conclude that the trial court abused its discretion by sentencing Bowers to thirty days for contempt.
 {¶ 28} We affirm the judgment of the Lake County Court of Common Pleas.
WILLAM M. O'NEILL, J., MARY JANE TRAPP, J., concur.
[1] The February 28, 2006 motion to show cause was the second filed by Lyons, the first one having been filed and voluntarily dismissed, without prejudice, on December 9, 2005. *Page 1