[Cite as *M.W. v. K.M.*, 2019-Ohio-5364.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY


In re M.O.E.W.                                           Court of Appeals No. OT-18-030

M.W.                                                    Trial Court No. 2007-JUV-000035 JUVG

      Appellee

v.

K.M.                                                    **DECISION AND JUDGMENT**

      Appellant                                        Decided: December 27, 2019

* * * * *

Michael W. Sandwisch, for appellee.

Danielle C. Kulik, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Ottawa County Court of Common

Pleas, Juvenile Division, which found defendant-appellant mother, K.M., in contempt for

violating two court orders: (1) plaintiff-appellee father's, M.W., parenting time schedule

with the minor child, M.O.E.W., and (2) relocating her residence with M.O.E.W. without prior notice to the court. For the reasons set forth below, this court affirms the judgment of the juvenile court.

{¶ 2} On July 12, 2007, appellee filed with the juvenile court a petition for parental rights over the child, who was then 15 months old. On September 13, 2007, the juvenile court filed a judgment entry ordering a shared parenting plan to which both parties, who never married, agreed. However, for the next 11 years the parties disputed the shared parenting plan, among other matters. During this period, effective on November 20, 2013, with consent of the parties, the juvenile court terminated the September 13, 2007 shared parenting plan, designated appellant as the residential parent and legal custodian to the child, and granted appellee unsupervised visitation and companionship pursuant to the juvenile court's standard "Companionship Schedule," known by local rule as "JC-3." Specifically, the order stated, "IT IS FURTHER ORDERED that Father shall have regular unsupervised parenting time pursuant to this Court's local rule known as JC-3 as attached and that all other provisions included in the attached JC-3 shall apply including all statutory notices." (Emphasis sic.) The juvenile court's judgment entry was journalized on November 27, 2013.

{¶ 3} In the course of the litigation, this court affirmed the juvenile court's decision to deny appellee's motion for reallocation of parental rights and responsibilities and termination of the November 27, 2013 parenting time order. *In re M.O.E.W.*, 6th Dist. Ottawa No. OT-17-022, 2018-Ohio-3512.

2.

{¶ 4} Disputes between the parties continued.  On April 20, 2018, appellee filed a motion to show cause for contempt.  He alleged four violations by appellant of the November 27, 2013 judgment entry: (1) denied Labor Day 2017 parenting time, (2) denied Christmas Holiday 2017 parenting time, (3) moving with M.O.E.W. without prior court approval and out of the child's school district, and (4) removal of M.O.E.W.'s telephone to deny telephone communications with appellee.

{¶ 5} The contempt hearing was held on July 16, 2018, at which appellant pled not guilty.  At the hearing, the juvenile court received testimony from appellant and from one of her ex-boyfriends, and accepted into evidence a number of exhibits.  The transcript of the hearing is in the record.

{¶ 6} On July 19, 2018, the juvenile court filed its judgment entry finding appellant in civil contempt for two of the four alleged violations of the November 27, 2013 judgment entry.  Then on August 15, 2018, after the parties briefed the issues of sanctions and purge conditions, the juvenile court ordered sanctions for appellant's contempt, in addition to the conditions by which appellant may purge her civil contempt.

{¶ 7} Appellant timely appealed the juvenile court's August 15, 2018 judgment setting forth two assignments of error:

I.  [Appellant] was found in contempt for failing to allow [appellee] his parenting time on Labor Day against the evidence adduced at trial and against the case law.

3.

II.  [Appellant] was found in contempt for failing to provide notice before relocating against the evidence adduced at trial and against the case law.

### I.  Law and Standard of Review

{¶ 8} According to R.C. 2705.031(B)(2), "any person who is subject to any parenting time or visitation order or decree, may initiate a contempt action for failure to comply with, or an interference with, the order or decree."  For the purposes of the matters in this appeal, we found the terms "parenting time," companionship," "visitation," and "custody" were used interchangeably in the record.

{¶ 9} "[A] court order finding a party in contempt and imposing a sentence conditioned on the failure to purge is a final, appealable order on the issue [of] whether the party is in contempt of court." *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 23.  The final judgment and orders made in cases of contempt may be reviewed on appeal.  R.C. 2705.09.  Appellate review of the juvenile court's decision in a civil-contempt proceeding is for an abuse of discretion.  *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 21.  Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).  Because abuse of discretion review is highly deferential, "we will not lightly substitute our interpretation for that of the issuing court."  *Hunter* at ¶ 29.

4.

{¶ 10} The burden is on the moving party in a civil-contempt proceeding to provide clear and convincing evidence that the alleged contemnor is in contempt of court. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980); *State ex rel. Doner v. Zehringer*, 134 Ohio St.3d 326, 2012-Ohio-5637, 982 N.E.2d 664, ¶ 3, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 139, 472 N.E.2d 1085 (1984).

{¶ 11} Contempt is defined by statute. "A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer; * * *." R.C. 2705.02(A). "Contempt of court is defined as disobedience of an order of a court." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. "Compliance with existing court orders is not optional or subject to negotiation." *Walton v. Walton*, 6th Dist. Wood No. WD-05-002, 2005-Ohio-5734, ¶ 13.

{¶ 12} "Clear and convincing evidence is 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State ex rel. Cincinnati Enquirer v. Deters*, 148 Ohio St.3d 595, 2016-Ohio-8195, 71 N.E.3d 1076, ¶ 19, quoting *Cross v. Ledford*, 161 Ohio St. 469, 471, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 13} "[P]roof of purposeful, willing or intentional violation of a court order is *not* a prerequisite to a finding of contempt." (Emphasis sic.) *Pugh* at 140. Nor is such proof required for imposing sanctions. "A court has authority both under R.C.

5.

2705.02(A) and on the basis of its inherent powers to punish the disobedience of its orders with contempt proceedings." *Zakany v. Zakany*, 9 Ohio St.3d 192, 459 N.E.2d 870 (1984), syllabus. "The purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court, and the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt." *Windham Bank* at paragraph three of the syllabus; *State v. Kilbane*, 61 Ohio St.2d 201, 205, 400 N.E.2d 386 (1980), quoting *State v. Local Union 5760, United Steelworkers of America*, 172 Ohio St. 75, 83, 173 N.E.2d 331 (1961) ("'[T]he purpose of sanctions in a case of civil contempt is to coerce the contemnor in order to obtain compliance with the lawful orders of the court.'").

{¶ 14} In a civil-contempt proceeding, the appropriate standard of appellate review for the sanctions imposed is the primary purpose which the trial court sought to achieve. *State v. Sandlin*, 11 Ohio App.3d 84, 87, 463 N.E.2d 85 (6th Dist.1983). The sanction in a civil-contempt proceeding must give the contemnor an opportunity to purge the contempt, and after successfully purged, the purpose of the contempt sanction has been achieved and the sanction is discontinued. *Id.* at 87-88.

{¶ 15} "Contempt may be classified as either direct or indirect. Direct contempt, which is statutorily defined as 'misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice,' may be punished summarily by the trial court. R.C. 2705.01. Indirect contempt is defined by R.C. 2705.02 * * * [and] takes place outside the presence of the court, which is usually unaware that it has occurred."

6.

*Ginsburg v. Haddad*, 6th Dist. Erie No. E-95-001, 1995 WL 571409, *3–4 (Sep. 29, 1995)*, citing *Cleveland v. Ramsey*, 56 Ohio App.3d 108, 109, 564 N.E.2d 1089 (8th Dist.1988)

{¶ 16} The Ohio Supreme Court has held that, "'the fact that [R.C. 2705.02] inferentially classifies an act of resistance to a lawful court process or order as an act of indirect contempt does not limit the power of a court to determine, in its sound discretion, whether such an act constitutes direct or indirect contempt.'" *Kilbane* at 204, quoting *Local Union 5760* at 81.

{¶ 17} "Courts, in their sound discretion, have the power to determine the kind and character of conduct which constitutes direct contempt of court. In imposing punishment for acts of direct contempt, courts are not limited by legislation but have the power to impose a penalty reasonably commensurate with the gravity of the offense." *Id.* at paragraph one of the syllabus, citing *Local Union 5760* at paragraph four of the syllabus.

{¶ 18} After the hearing on contempt, the range of sanctions for a first offense by a contemnor found guilty is stated in RC 2705.05(A)(1).

In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties: (1) For a first offense, a

7.

fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both.

{¶ 19} Separately from the contempt hearing, a "purge hearing is not a new contempt proceeding but a conclusion of the originating contempt hearing, because its purpose is to determine whether the contemnor has satisfied the purge conditions. If the conditions are unfulfilled, the court is entitled to enforce the sentence already imposed, the sanction that could have been avoided by the contemnor's compliance." *Liming v. Damos,* 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 16. "Because the propriety of the contempt finding or the purge conditions is not in question at a purge hearing, the only issue for the court to decide is whether the parent complied with those conditions." *Id.* at ¶ 30. Nevertheless, a purge hearing may result in a separate appeal. "We further recognize that a contemnor may have an additional appeal on the question whether the purge conditions have been met following execution of sentence on the failure to purge." *Docks Venture,* 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, at ¶ 23.

## II. Analysis

### A. Parenting Time

{¶ 20} In support of her first assignment of error, appellant argued the juvenile court erred when it found she willfully violated the parenting time order with respect to parenting time. Appellant argued that she and appellee previously negotiated parenting time that deviated from the court order, and Labor Day in 2017 was no different. Appellant further argued that because the court order did not specify the location of the

8.

parenting time exchange location, it was reasonable for her to expect to negotiate with appellee to arrange to pick up M.O.E.W. on Labor Day in Columbus, Ohio, approximately two hours from their residence.

{¶ 21} In response, appellee argued the juvenile court did not err when it found appellant in contempt of court for violating the parenting time provision of the parenting time order. Appellee argued he met his burden by clear and convincing evidence that appellant unilaterally changed the parenting time for Labor Day 2017 without his consent, and appellant deprived him of his court-ordered parenting time with M.O.E.W.

{¶ 22} According to the juvenile court's standard JC-3 "Companionship Schedule", the expectations of reasonableness and cooperation for parenting time/companionship are stated as follows:

> Companionship is a time for children to be with the non-residential parent. * * * It is important that each parent be flexible, willing to change times and/or dates by mutual cooperation and agreement based on the changing needs of a child as he or she grows older, in addition to the parents' own schedules and interests. Liberal visiting arrangements are encouraged, as contact with both parents is important to the children. Specific items in the Judgment Entry take precedence over this schedule. Changes or modifications may be made by the Court if the need for such is shown. COMPANIONSHIP SHALL TAKE PLACE AT SUCH TIMES AND PLACES AS THE PARTIES CAN AGREE. (Emphasis sic.)

9.

{¶ 23} The November 27, 2013 judgment entry does not contain any specific item regarding Labor Day parenting time that would take precedence over the juvenile court's JC-3 schedule. Paragraph 9(a) of the JC-3 schedule states, "If not changed by agreement, holiday times are as follows: * * * Labor Day * * * Odd Numbered Years[:] Father." Paragraph 9(b) then states, "If the parties cannot agree on hours for holiday visitation, it shall be as follows: * * * Labor Day, Sunday at 6:00 p.m. to Monday at 6:00 p.m." According to paragraph 9(c), "Holidays will take priority over any other visitation except birthdays."

{¶ 24} Paragraph 12 of the JC-3 schedule states, in part, "Each parent shall be prompt for pickup and return of the child(ren) and the residential paren t shall ready the child(ren) emotionally and physically for the companionship."

{¶ 25} In its August 15, 2018 order finding appellant in contempt, the juvenile court made the following findings and conclusion of law:

2017 was an odd-numbered year. Labor Day in 2017 fell on Monday September 4. The evidence showed Mother traveled to Columbus, Ohio in 2017 with the child over the Labor Day weekend. She texted Father and stated he could pick up Morgan for his Labor Day visitation at a hotel in Columbus. Father did not agree to this proposal and the visitation did not occur. * * * It was the responsibility of the Mother to have the child physically ready for Father's visit, JC-3 paragraph 12. The child was not physically ready for visitation because she was at a place other than the mother's residence when Father's Labor Day Visitation was to begin. The

10.

Mother's conduct deprived the Father of visitation over the 2017 Labor Day Weekend. This is a willful violation of the Court's visitation order.

{¶ 26} At the July 16, 2018 contempt hearing, appellant testified she notified appellee at least two weeks before Labor Day 2017 of her plan to take M.O.E.W. to Columbus to see relatives. Her plan was to leave for Columbus, about a two-hour drive from Port Clinton, on the Friday before Labor Day, and then appellee would come to Columbus to pick up M.O.E.W. at 6:00 p.m. on the Sunday before Labor Day and deliver her to Oak Harbor at 6:00 p.m. on Monday, Labor Day. When appellee did not agree, appellant offered alternatives to make up lost parenting time, such as a 4:00 p.m. pick up in Columbus, or a new pick up time and location halfway between Port Clinton and Columbus.

Q: And you expected Mr. Woods to drive to Columbus to do the parenting time exchange?

A: Nothing in * * * in this agreement right here that you produced says that [M.O.E.W.] has to be * * * accessible, and I've picked [M.O.E.W.] up in other places besides Port Clinton in the past to get my visitation.

Q: You think it's reasonable for [appellee] to drive to Columbus to pick up his child for parenting time, is that what you're saying?

A: Yes.

{¶ 27} Then the juvenile court directly asked appellant questions:

11.

Court: I'm trying to understand what your thinking is here about drop off and pick up. So do I understand your testimony to be that * * * while you are with [M.O.E.W.], let's say, on a day that * * * you're supposed to have a handoff to [appellee], he's supposed to come pick her up, that you could be anywhere in the world, and it's his responsibility to find you in order to have his visitation time?

A: No.

Court: That's not how you interpret the order, correct?

A: No, I don't interpret it like that.

Court: No, right?

A: No.

Court: Well, how close to Ottawa County can you be and still be in compliance with the order?

A: Eight miles, 10 miles * * *.

* * *

Court: All right. But I'm getting the sense that you understood that you're not in compliance with the terms of the order because you were down in Columbus. He's not supposed to go to Columbus to pick up his daughter, is he?

A: Doesn't say anywhere that he has to be back, to be in county.

{¶ 28} Appellant then explained that from a prior hearing in this litigation, "Magistrate Conway said * * * that [if] she want[ed] to enforce anything * * * there's * * * nothing in the order that says that [M.O.E.W.] has to be at the house."

{¶ 29} Appellant admitted she knew appellee was not agreeing with her unilateral change of his Labor Day parenting time.

> Q: Did it come to your attention that [appellee] did not want to go along with what you and [M.O.E.W.] had talked about?
>
> A: Yes.

{¶ 30} During the closing argument portion of the contempt hearing, the juvenile court stated, "I don't know how else you would interpret the order in terms of drop off and pick up other than the regular residence of the parties unless otherwise agreed to, which it wasn't in this particular case." And later, "Why * * * would your client, herself, even quibble over the location unless she knew * * * that [M.O.E.W.] was to be closer to him for the pick up? Why would she offer additional time? She – she knew * * *.

{¶ 31} The juvenile court immediately ruled at the conclusion of closing arguments: "Okay, as to violation A-1, which is holiday visitation, Labor Day, I find the Defendant * * * is in willful contempt of court."

{¶ 32} We reviewed the entire record and do not find the juvenile court abused its discretion when it found appellant in contempt of court for violating the November 27, 2013 order governing appellee's parenting time for the Labor Day holiday in 2017. We do not find the juvenile court's attitude was unreasonable, arbitrary or unconscionable,

13.

and we will not disturb the findings of the juvenile court. We further find that appellant's willfulness was not relevant to the juvenile court's determination.

{¶ 33} Appellant's first assignment of error is not well-taken.

## B. Relocation

{¶ 34} In support of her second assignment of error, appellant argued the trial court erred when it found she willfully violated the parenting time order with respect to her relocation within Ottawa County. Appellant argued she notified her attorney of her move from Port Clinton to Oak Harbor, Ohio, and she notified appellee by text message. Appellant argued that at all times appellee knew how to reach her. Appellant further argued that despite the move out of the Port Clinton school district, M.O.E.W. was still able to attend her same Port Clinton school.

{¶ 35} In response, appellee argued the juvenile court did not err when it found appellant in contempt of court for violating the moving provision of the parenting time order. Appellee argued he met his burden by clear and convincing evidence when appellant admitted she failed to notify the juvenile court of her move.

{¶ 36} Paragraph 22 of the JC-3 schedule states, "If the residential parent intends to move to a residence other than the residence specified in the visitation order or decree of court, that parent shall file a Notice of Intent to Relocate. See R.C. 3109.051(G)(1)."

{¶ 37} R.C. 3109.051(G)(1), regarding parenting time rights, states:

> If the residential parent intends to move to a residence other than the
> residence specified in the parenting time order or decree of the court, the
> parent shall file a notice of intent to relocate with the court that issued the

14.

order or decree. Except as provided in [R.C. 3109.051(G)(2), (3), and (4)], the court shall send a copy of the notice to the parent who is not the residential parent. Upon receipt of the notice, the court, on its own motion or the motion of the parent who is not the residential parent, may schedule a hearing with notice to both parents to determine whether it is in the best interest of the child to revise the parenting time schedule for the child.

{¶ 38} In its August 15, 2018 order finding appellant in contempt, the juvenile court made the following findings and conclusion of law:

The evidence showed Mother moved to Oak Harbor, Ohio with [M.O.E.W.]. Oak Harbor is outside [M.O.E.W.'s] school district of Port Clinton. Mother admitted she did not file a Notice of Intent to Relocate with the Court. Mother sated [M.O.E.W.] is still attending school in Port Clinton. * * * Mother did not file a notice of Intent to Relocate with the Court. Her conduct was in willful violation of the Court's JC-3 visitation order.

{¶ 39} At the July 16, 2018 contempt hearing, appellant testified she married in October 2017. The next month she and M.O.E.W. moved from Port Clinton to Oak Harbor, which is also in Ottawa County, Ohio. She notified her attorney and appellee one or two weeks before she moved. Appellant testified that although Oak Harbor is outside of the Port Clinton school district, M.O.E.W. was able to still attend school there, which was her intent. She admitted failing to communicate her intent to appellee.

15.

Q: Okay. So Count 2 of [appellee's] contempt motion is that you moved without proper notice, and you admit that you did move without proper notice, correct?

A: Yes.

{¶ 40} The juvenile court immediately ruled at the conclusion of closing arguments: "As to B, Moving, I find the Defendant is in willful contempt of court for violating the provision * * * requiring her to notify the Court of her intent to relocate under Paragraph 22 of JC-3."

{¶ 41} We reviewed the entire record and do not find the juvenile court abused its discretion when it found appellant in contempt of court for violating the November 27, 2013 order governing notification to the juvenile court of her change of residence. We do not find the juvenile court's attitude was unreasonable, arbitrary or unconscionable, and we will not disturb the findings of the juvenile court. We further find that appellant's willfulness was not relevant to the juvenile court's determination.

{¶ 42} Appellant's second assignment of error is not well-taken.

### C. Sanctions and Purge Conditions

{¶ 43} According to paragraph 31 the juvenile court's JC-3 schedule, to which appellant agreed:

Penalties for the Parent Who Willfully Fails to Comply with the Companionship Schedule. A parent who willfully fails to comply with this companionship schedule may be found in contempt of Court, which may include a fine and/or jail sentence. The court may also assess attorney fees

16.

and other court costs, order the appointment of a Guardian *Ad Litem* and payment of the Guardian *Ad Litem's* fee. The Court may order the reimbursement of transportation costs, and make-up companionship, in addition to any other remedy available at law.

{¶ 44} Having found appellant in contempt of court and that it was appellant's first offense, after briefing by the parties on the issues of sanctions and the purge conditions, the juvenile court then sanctioned appellant. As stated in the juvenile court's August 15, 2018 judgment entry, "Mother * * * is in Contempt of the Court's visitation order dated November 27, 2013. The Mother shall be sentenced to three days (72 consecutive hours) in the Ottawa County Jail and a $50 fine for her contumacious conduct."

{¶ 45} We find these sanctions are within the range of sanctions for a first offense by a contemnor found guilty as stated in RC 2705.05(A)(1) and as stated in the juvenile court's November 27, 2013 parenting time order. We further find the primary purpose of the sanctions which the juvenile court sought to achieve was to coerce compliance with its lawful parenting time order.

{¶ 46} As further stated in the juvenile court's August 15, 2018 judgment entry:

Said jail sentence is held in abeyance on the condition that the Mother purge herself of contempt by complying with all of the following: 1) To make up for missed visitation between Father and Minor Child, Father shall have visitation for the Labor Day Weekend commencing Friday August 31, 2018 at 6:00 p.m. and ending Tuesday September 4,

2018 at 8:00 a.m. (or the beginning of the school day). 2) Father shall have weekend visitation each weekend in October, 2018 in addition to his mid-week visits. 3) For the Labor Day visitation and the October weekend visitations only, the Mother shall be responsible for transporting the child to the Father's residence at or before 6:00 p.m. for the commencement of the Father's visits. 4) Mother shall notify the court of her current mailing address, current residence address, telephone number(s), email address(es) and current operator's license number issued by the Ohio Bureau of Motor Vehicles. Mother shall give her notice to the Court no later than August 31, 2018. 5) Mother shall pay the $50 fine and court costs associated with the Motion for Contempt no later than August 31, 2018. The clerk shall issue a cost bill to the Mother for court costs incurred beginning April 26, 2018 to the date of this entry. 6) Mother shall pay the Father's attorney's fees in the amount ordered by the Court of legal costs the Father incurred relative to the filing of the motion for contempt. The amount shall be determined at a separate hearing. 7) A Purge hearing is set for Thursday November 8, 2018 at 10:00 a.m. at which time the Mother * * * shall appear personally before me and demonstrate she has complied with all the above conditions in full or she shall be remanded to the custody of the Sheriff of Ottawa County or his deputy to serve the sentence for contempt.

{¶ 47} We find the juvenile court gave appellant the opportunity to purge herself of the contempt and set a date for the purge hearing to determine if the purpose of the contempt sanctions, to coerce compliance with the lawful parenting time order, was achieved.

{¶ 48} We also find the record shows that on August 29, 2018, the juvenile court granted appellant a stay of the August 15, 2018 judgment entry on two conditions: (1) she pay by September 14, 2018, a supercedeas bond of at least $250 as security for fines and costs, and (2) she "strictly comply with all the terms of the current JC-3 visitation schedule until her appeal is resolved."

{¶ 49} We reviewed the entire record and do not find the juvenile court abused its discretion when it sanctioned appellant in accordance with R.C. 2705.05(A)(1) and conditioned the sanctions with purge conditions, now stayed. We do not find the juvenile court's attitude was unreasonable, arbitrary or unconscionable, and we will not disturb the findings of the juvenile court.

## III. Conclusion

{¶ 50} On consideration whereof, we find the judgment of the juvenile court finding appellants in contempt of court and ordered sanctions with purge conditions was not an abuse of discretion. The judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

19.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                           _____
                                                        JUDGE
Thomas J. Osowik, J.

                                            _____
Gene A. Zmuda, J.                                       JUDGE
CONCUR.

                                            _____
                                                        JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.